BOARD OF WATER ENGINEERS v. C. K. McKNIGHT ET AL.

No. 3277.   Decided March 16, 1921.

(229 S. W., 301).

1.—Board of Water Engineers—Judicial Power.

The Act of March 19, 1917, sections 105-132 (Laws, 35th Leg., ch. 88, pp. 225-242) undertakes to empower the Board of Water Engineers to adjudicate vested water rights and to give the same effect to the Board's determinations, when not appealed from, as is given to judgments of courts of competent jurisdiction. (P. 90).

#### 2.—Same—Statute Adopted From Another State.

The statutes comprising our revised Irrigation Law (Act of March 19, 1917) were taken from those of Wyoming and Nebraska where they had previously been held by the courts of those States to make the determination of the boards created thereunder as to the right to use water in those States equivalent in effect to judicial decrees. And the Legislature of Texas, in adopting them, is presumed to have been familiar with such decisions and to have intended the statutes adopted by them to be given the same construction and effect. (Pp. 90, 91).

#### 3.—Constitutional Law—Departments of Government—Distribution of Powers.

The Constitution divides the powers of government of the State into three distinct departments, legislative, executive, and judicial, each confided to a separate body of magistracy and forbidden to exercise any power properly attached to either of the others (Const. Art. 2, Sec. 1). The entire judicial power of the State is vested wholly in its courts (Const. Art. 5, Sec. 1). (Pp. 91, 92).

#### 4.—Board of Water Engineers.

The Board of Water Engineers of the State of Texas, created under the Act of March 19, 1917, are executive officers clothed with administrative powers and can not be classified as belonging to the Judicial Department of the State. (P. 91).

#### 5.—Riparian Owners—Irrigation—Vested Rights.

Riparian proprietors had, prior to the enactment of the statute under which the Board of Water Engineers was created, vested rights in the use of the waters of the stream for irrigation, for power, etc., subject to the superior rights of others and to reasonable use with reference to other's rights (Watkins Land Co. v. Clements, 98 Texas, 585). And this was a property right of which the proprietor could not be deprived, even for the public benefit, without adequate compensation (McGhee Irrig. Ditch Co. v. Hudson, 85 Texas, 593). (P. 92).

#### 6.—Same—Constitutional Law.

No power is more properly or certainly attached to the Judicial Department than that which determines controverted rights to property by means of binding judgments. The statute which confers on the Board of Water Engineers, an administrative body, authority to determine cases pending in court between litigants, involving property, as well as such future controversies as, but for the Act, would have to be adjudicated by the courts, was void because in contravention of the Constitution. (Pp. 92, 93).

#### 7.—Same—Review by the Courts.

The Constitution makes no exception, in its prohibition of the exercise of judicial powers by the Executive Department, of cases in which its determinations may be reviewed by the courts, and such exercise remains unlawful though the statute provides for appeal from such tribunal to the courts. (Pp. 93, 94).

#### 8.—Same—Preservation of Vested Rights.

The statute giving the Board of Water Engineers judicial authority is not rendered valid by the provision that their determination shall not affect or destroy vested rights. If such rights remain unaffected the Board's orders remain mere nullities, and ought not to be allowed to cloud the title of the holder of such rights. (P. 94).

#### 9.—Case and Statute Distinguished.

The holding in Pacific Live Stock Co. v. Oregon Water Co., 241 U. S., 440, sustaining the Oregon Irrigation law, is distinguished as involving no judicial action by a board, its findings there being merely an advisory report, upon which a final determination is made by a court. (Pp. 94, 95).

10.—Constitutions Distinguished.

The rulings of the courts of Wyoming and Nebraska, sustaining the constitutionality of irrigation laws similar to that of Texas, distinguished by the difference in the terms of their State Constitutions from that of Texas. (P. 95).

11.—Cases Distinguished.

Middleton v. Texas Power & Light Co., 108 Texas, 96, and Baldacchi v. Goodlet, 145 S. W., 325, discussed and distinguished from the present case. (Pp. 95, 96).

Error to the Court of Civil Appeals for the Eight District, in an appeal from Reeves County.

On appeal of McKnight from the refusal to award him an injunction, the judgment was reversed and the injunction granted. McKnight v. Pecos & Toyah Lake Irrig. Co., 207 S. W., 599. Thereupon the Board of Water Engineers, appellee, obtained writ of error.

C. M. Cureton, Attorney General, W. F. Potter, and Gaines & Corbett, for plaintiff in error.—The Court of Civil Appeals erred in holding that the determination and establishment of the relative rights of the various claimants to the waters over which the Board of Water Engineers has jurisdiction, upon the part of said Board of Water Engineers, was the exercise of judicial power, which is vested exclusively in the courts, and that, therefore, the act of the Legislature conferring such authority upon the Board was in violation of Article 2 of the Constitution of this State and Section 1 of Article 5 of the Constitution of this State and, hence, void. This action of the court was error for the reasons:

(a) That the exercise of such authority by the Board of Water Engineers is the exercise merely of an administrative function which may be and which was rightfully conferred upon an administrative board of the State, and was not the exercise of judicial power within the meaning of the provisions of the Constitution held to inhibit it, in the opinion of the court.

(b) Because the true relation of the proceedings by the Board to those which may be brought before the court under the act involved is that such proceedings by the Board are not independent or unrelated, but are parts of a single statutory proceeding, the action had by the Board being merely preliminary to the later stages of judicially determining water rights before the court; that is, the findings and action of the Board are not final as to any person or claimant, except as to those who desire them to be final, but they are necessary steps, appropriate for determining beforehand whether or not there is anything to be litigated or anyone who desires litigation; therefore, such actions and findings by the Board are not judicial, but are administrative and for the purpose of aiding the parties to determine as between themselves whether there is any

difference of opinion, and, if so, of determining in an effective way their several rights before the courts. The exercise of such authority is not judicial within the constitutional meaning of that term, and is such authority as was rightfully conferred upon the Board of Water Engineers.· 3 Kinney on Irrigation, Secs. 1341, 1342, 1586, 1591; Pacific Livestock Company v. Oregon Water Board, 241 U. S., 451; Farm Investment Company v. Carpenter, 9 Wyo., 147, 50 L. R. A., 747; Crawford Company v. Hall, 60 L. R. A., 889; Advance Sheets, Corpus Juris, Subject—Workmen's Compensation Acts, p. 120; Poccardi v. Public Service Commission, L. R. A., 1916A, 299; DeConstantin v. Public Service Commission, L. R. A., 1916A, 329; Middleton v. Texas Power and Light Co., 108 Texas, 96, 185 S. W., 556; Baldacchi v. Goodlet, 145 S. W., 325.

The waters referred to being public property are the property of the State of Texas, under the complete control of the Legislature, and the right to their use can be acquired only in the manner and under the conditions prescribed by legislative enactment. The Legislature having prescribed the method and manner in which the right to use public waters may be had, and providing machinery for the administration of these rights the exercise of dominion over such waters becomes executive and is merely an administrative ·function which may be and was rightfully conferred upon an administrative board of the State, and is in no sense the exercise of judicial power of such administrative body as is held by this Court.

*John B. Howard* and *Clay Cooke*, for defendant in error.—The appellant desires to present this cause to this Court upon three main propositions. First, that the Act of·the Legislature under which the Board of Water Engineers is attempting to proceed to a final determination and adjudication of plaintiff's property rights, to-wit: the waters of the Pecos River, is violative of Article II of the Constitution of Texas and Section 1 of Article V of the Constitution of Texas. Second, that even if said Act is constitutional, that said Board cannot proceed to put the actual users of water from the Pecos River to the expense of a hearing and the consequential appeal and expense resulting therefrom, except upon the petition of an actual user of water from the stream, and no such petition being filed, the Board is proceeding without authority of law. Third, that the matters attempted to be adjudicated by said Board·being in conflict with the jurisdiction of the District Court of the United States and the District Court of Reeves County in the cases pending before said courts, the acts of said Board are an attempted infringement of the judicial powers of said courts by an executive branch of the Government which equity will enjoin.

Judicial power is the power which adjudicates upon and protects

the rights and interests of individual citizens, and to that end construes and applies the law. Land Owners v. People, 113 Ill., 296, 309; People v. Chase, 165 Ill., 527, 538, 46 N. E., 454, 458, 36 L. R. A., 105; People v. Simon 176 Ill., 165, 169, 52 N. E., 910, 44 L. R. A., 801, 68 Am. St. Rep., 175; Arms v. Ayer, 61 N. E., 851, 855, 192 Ill., 601, 58 L. R. A. 277, 85 Am. St. Rep., 357; State v. Le Clair, 30 Atl., 7, 9, 86 Me., 522; People v. Murphy, 72 N. Y. Supp., 475, 65 App. Div. 126; U. S., v. Smith, 4 N. J. L., 33; In re Walker, 74 N. Y. Supp., 94, 96, 68 App. Div. 196; State v. Whitford, 11 N. W., 424, 426, 54 Wis., 150; Crawford Co. v. Hathaway, 67 Neb., 325, 93 N. W., 781, 60 L. R. A. 889, 108 Am. St. Rep., 647; Farmers' Irr. Dist. v. Frank, 72 Neb., 136; Farm Inv. Co. v. Carpenter, 9 Wyo., 110, 61 Pac., 258, 50 L. R. A., 747, 87 Am. St. Rep., 918; United States etc. Co. v. Gallegos, 89 Fed. Rep., 769, 32 C. C. A., 470, 61 U. S. App., 13; Thorp v. Woolman, 1 Mont., 168, 8 Morr. Min. Rep. 87; Thorp v. Freed, 1 Mont. 651.

MR. JUSTICE GREENWOOD delivered the opinion of the court.— Defendant in error, C. K. McKnight, brought this suit against the plaintiffs in error, Pecos & Toyah Lake Irrigation Company and the Board of Water Engineers of the State of Texas, besides others, to enjoin a proceeding before said Board of Water Engineers, instituted by the Irrigation Company, for the determination of the relative rights of various claimants to the waters of the Pecos River. The injunction was sought on the ground that sections 105 to 132 of the Act of March 19, 1917, ch. 88, being articles 5011½f to 5011½ss of the Supplement to Vernon's Texas Civil and Criminal Statutes, were void because repugnant to section 1, of article II, and to section 1, of article V, of the State Constitution. From an order of the District Judge refusing the injunction, defendant in error appealed to the Court of Civil Appeals, where he obtained a judgment granting the injunction which he sought. 207 S. W., 599.

The writ of error was allowed because of the great importance of the question presented.

It will suffice here to briefly state the substance of articles 5011½f to 5011½ss, save as to some of them, which will be set out in full.

Article 5011½f declares it shall be the duty of the Board of Water Engineers, when they find facts and conditions justify it, to make a determination of the relative rights of the various claimants to the waters of any stream or of any other source of supply, on the petition of any water user, after fixing a time to take testimony and to make examinations. The article provides that any suit brought in any court to determine rights to the use of water may be transferred to the Board for its determination.

Article 5011½ff requires the publication, in two issues of one or more newspapers of general circulation in the portion of the state wherein the water supply is situated, of notice of the date when the Board will begin to take testimony as to the rights of the parties claiming water, and of the date when it will begin to investigate the flow of the stream and of ditches and pumps taking water from the stream.

Article 5011½g provides: "it shall be the duty of the Board of Water Engineers to cause a notice to be sent by registered mail to each person, firm or corporation shown by the Records of the Board to the Board to be a user or claimant to the use of water upon such stream or other source of water supply, which said notice shall set forth the date when a member or members of the board will sit within the county of such claimant's residence, or the county in which may be situated the land to which such water right may be appurtenant, and also setting forth the date when the examination of the stream or other source of water supply, and the ditches and pumps diverting water therefrom, will begin; and also the date when testimony will be taken as to the rights to the water of said stream, or other source of water supply. Said notice shall be mailed at least thirty days prior to the date set therein for making examination of such stream, or other source of water supply, and the taking of testimony."

Articles 5011½gg and 5011½h require the claimant or owner of water to present to the Board, on a blank form to be furnished him by the Board with the notice last mentioned, all particulars necessary for the determination of the water rights to which he lays claim, including such facts as will disclose a compliance with the law in acquiring the right claimed, all to be verified by the claimant's oath.

Article 5011½hh directs that the Board shall begin taking testimony at the time fixed in the notice and shall continue until completed, with adjournments from time to time and from place to place for convenience. The article also forbids a member who is interested in the waters of a stream from taking any part in proceedings to determine the rights of claimants to such waters.

Article 5011½i prescribes notice, from the Board, by registered mail to the various claimants that at a time and place named, such time being not less than ten days thereafter, all of the evidence shall be open to the inspection of the claimants and others.

Articles 5011½ii and 5011½j empower the board to employ stenographers, hydrographers and other experts in the performance of certain duties, and to charge such expenditures as costs.

Article 5011½jj provides that any person claiming any interest in the stream or water supply involved may "contest any of the rights of the persons who have submitted evidence," by notifying the

Board, in writing, within thirty days after the expiration of the period for public inspection of testimony taken, such written notice to be duly verified and to state with reasonable certainty the grounds of contest. Thereupon it becomes the duty of the Board to notify the contestant and contestee to appear before the Board at a designated, convenient time and place.

Article 5011½k authorizes the Board to compel witnesses to testify, after being subpoenaed, and to order the taking of depositions.

Article 5011½kk directs that all evidence on original hearings and on contests be transmitted to the Board, upon the expiration of the period for which same is kept open, and that such evidence shall thereupon be filed as a public document in the Board's office.

Article 5011½l makes it the duty of the Board, either through some member or by agent, to proceed at the time specified in its notice to examine the stream or other source of water supply, and all works for the diversion of the water, all ditches and canals, all lands irrigated or irrigable, and to gather all data which may be essential to a proper understanding of the relative rights of the parties, and to reduce to writing all observations and measurements, which shall become a part of the Board's records. The article also directs the Board to make a map or plat showing the course of the stream, the location of each ditch and canal, and the lands which have been irrigated or are susceptible to irrigation from canals and ditches already constructed.

Article 5011½ll provides: "As soon as practicable after the compilation of said data and the filing of said evidence in the office of the Board of Water Engineers, the Board shall make and cause to be entered of record in its office, findings of fact and an order of determination, determining and establishing the several rights to the waters of said stream. And where the evidence taken at such a hearing as herein provided shall disclose existing water rights not represented at such a hearing, said rights shall be included in such findings of fact of said Board and shall be likewise determined and established. A certified copy of such order of determination and findings shall be filed in every county in which such stream or any portion of a tributary is situated, or by which it flows, with the county clerk of said county."

Article 5011½m is as follows: "Upon the final determination of the rights to the waters of any stream or other source of water supply, it shall be the duty of the secretary of the Board of Water Engineers to issue to each person, association or corporation represented in such determination, upon payment of the fee required by law, a certificate to be signed by the chairman of the Board of Water Engineers, and attested under seal by the secretary of said board, setting forth the name and post office address of the owner of the

right, the date of the priority, extent and purpose of such right, and, if such water be for irrigation purpose, a description of the legal subdivisions of the land to which the water is appurtenant. Such certificate shall be transmitted by the secretary in person or by registered mail, to the county clerk of the county in which such right is located, and it shall be the duty of the county clerk, upon receipt of the statutory fee, to record the same in a book prepared and kept for that purpose, and the clerk shall, upon receipt of the filing fee and the recording of said certificate, immediately transmit the certificate to the owner.''

Article 5011½mm provides: ''Any party or any number of parties, acting jointly, who feel themselves aggrieved by the determination of the Board of Water Engineers, may take an appeal from the decision of the board to the District Court. All persons joining in the appeal shall be joined as appellants, and all others, parties to the proceedings, shall be joined as appellees.''

Articles 5011½n, 5011½nn, and 5011½o, prescribe how an appeal shall be perfected and prosecuted, requiring besides certain notice to all adversary parties and to the secretary of the Board, the filing of a bond in the District Court, to be approved by the clerk, within sixty days after the date of the determination appealed from, such bond to be payable to all the parties to the proceeding other than the appellant, to be in such amount as the clerk may fix, and to be conditioned that the appellant will prosecute his appeal to effect and pay all costs which may be adjudged against him. The transcript is to be filed with the district clerk within ninety days from the date of the order appealed from and consists of a certified copy of such order and of all of the records relating thereto, and also the originals or certified copies of all documentary evidence offered or prepared by the Board, including measurements. The transcript is to be accompanied by a petition setting out the cause of the complaint of the party appealing.

Article 5011½oo, reads: ''When any appeal to the District Court shall have been perfected, as provided in the aforesaid sections, a trial *de novo* shall be held in the District Court, and the practice in the taking of testimony and the pleadings therein shall follow as nearly as may be the procedure by law in appeals in probate cases from the County to the District Court, except as herein otherwise provided.''

Article 5011½p, declares admissible in evidence all surveys, plats, measurements, and other data collected or prepared by the Board, and all testimony taken by it, under certificate of the Board's secretary.

Article 5011½pp provides: ''After final hearing, the court shall enter a decree affirming or modifying the order of the Board of

Water Engineers, and may assess such costs and apportion the same, as it deems just. Appeals may be taken from the judgment of the District Court to the Court of. Civil Appeals and Supreme Court, in the same manner as in other cases.''

Article 5011½q reads: ''Pending final determination of the cause on appeal, the order of the Board of Water Engineers shall be in full force and effect, and the operation thereof shall not be suspended by the appeal.''

Article 5011½qq declares that ''the determination of the Board of Water Engineers, as confirmed or modified on appeal, as provided in this Act, shall be conclusive as to all prior rights, and upon the rights of all existing claimants, upon the stream or other body of water embraced in such determination.''

Article 5011½r provides that any claimant to the use of water who fails to appear in the proceedings before the Board and to submit proof of his claim is, after three years, barred and estopped from subsequently asserting any rights theretofore acquired upon the stream or other source of water supply, and shall be held to have forfeited all rights to appropriate or use the waters theretofore claimed by him, ''provided that nothing herein contained shall be held to in any way destroy, infringe or impair the right of any riparian owner to the use of the water from such ·stream for domestic purposes and use or for the use of stock, and it shall not be necessary for the claimant of this right to appear or assert his right to such use, but the same shall be respected.''

Articles 5011½rr, 5011½s, and 5011½ss authorize the creation of water districts and the appointment of water commissioners, who are directed to divide and distribute water among users according to the determination of the Board.

By articles 5011½f, 5011½jj, and 5011½ll, the Legislature has undertaken to empower the Board of Water Engineers to adjudicate vested water rights, save possibly as to the use of water for stock and domestic purposes, and has undertaken to give the same effect to the Board's determinations, when not appealed from, as is given to judgments of courts of competent jurisdiction.

This appears plainly enough from the language that it shall be the Board's duty to ''make a determination'' of ''the relative rights of the various claimants to waters of such streams;'' that the Board shall hear contested controversies relative to water rights; and, that it ''shall make and cause to be entered of record in its office findings of fact and an order of determination, *determining and establishing the several rights to the waters of said stream.*''

The history of the statutes leads to the same construction. They were taken from the laws of Wyoming and Nebraska. Prior to their enactment in Texas, the Wyoming Supreme Court had held: ''It

may be assumed that, in the absence of fraud or collusion, any matter actually and legally determined by the final decree of the board becomes *res judicata* at least, as to the public and the parties participating in the proceedings.'' Farm Investment Co. v. Carpenter, 9 Wyo., 147, 50 L. R. A. 759, 87 Am. St., 918, 61 Pac., 268. The same effect had been given to the statutes of Nebraska, the Supreme Court of that State saying: ''The Nebraska statute of 1895 is substantially an adoption of the Wyoming system. While the state board of irrigation is differently constituted from the board of control in Wyoming, its powers and functions are the same, and the provisions of the section by which the board was directed to begin the determination of the priorities of right to use the water of the state are identical with those in the Wyoming act. . . . It would seem that an adjudication made by the state board of irrigation upon a matter properly before it, and within the scope of its powers and duties, is final, unless appealed from to the district court. . . . Indeed, if the determination of the state board of irrigation with reference to the priorities of appropriators are not of this final character, of what benefit or use would they be? For the board to attempt to decide a controversy or to establish a right, when, in fact, after it had acted, no right was established or controversy settled, would be a vain thing.'' Farmers Canal Co. v. Frank, 72 Neb. 151, 152, 100 N. W. 286.

The presumption is indulged that our Legislature was aware of the fixed judicial interpretation of the statutes in the states from which they were copied, and having been adopted, as thus construed, their validity is to be determined in the light of such construction. City of Tyler, v. St. Louis, S. W. Ry. Co. 99 Texas, 498, 13 Ann. Cases, 911, 91 S. W., 1; Munson v. Hollowell, 26 Texas, 481, 84 Am. Dec., 582.

It is not claimed that the Board of Water Commissioners can be classified as belonging to the judicial department of the government of Texas. Instead, it is contended on behalf of the Board that its members are executive officers, who have been clothed with administrative powers of a non-judicial or merely quasi-judicial character. The members of the Board under the whole irrigation act being beyond question of the executive department, the Constitution peremptorily forbids the exercise by them of judicial power, section 1, of article II providing: ''The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons, being of one of these departments, shall ex-

ercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The entire judicial power of the State Government, unless otherwise expressly provided in the Constitution, is confided to the courts by section 1 of article V in these words: "The judicial power of this state shall be vested in one supreme court, in courts of civil appeals, in a court of criminal appeals, in district courts, in county courts, in commissioners' courts, in courts of justices of the peace and in such other courts as may be provided by law."

From what has been stated it clearly appears that the precise question to be decided is whether the Legislature could confer on persons in the executive department power to determine and adjudicate the rights and priorities of claimants of water rights, in the face of the constitutional prohibition against the exercise by officers of the executive department of any power properly attached to the judicial department, except in the instances expressly permitted.

When this statute was enacted the property right of a riparian owner in Texas could extend further than to sustain the application of the waters of a stream through his land to domestic and live stock uses  One of the riparian owner's vested rights was to use the water for irrigation or for power, provided such use was not inconsistent with the superior rights of others, and provided such use was reasonable, when due regard was had to the rights of others.  It is said in the opinion of Judge Brown in Watkins Land Co. v. Clements, 98 Texas, 585, 70 L. R. A., 964, 107 Am. St., 653, 86 S. W., 735: "Subject to the right of natural use by other riparian proprietors, each riparian owner is entitled to use the water of a stream, which flows by or through his land, for the purpose of irrigation; provided such use is reasonable, considering all the circumstances and conditions under which it is made.".

The nature of the right of the riparian proprietor to apply flowing water to lawful uses, as property, is clearly disclosed by the court's decision by Chief Justice Stayton that the proprietor could not be deprived of this right, even for the public benefit, without adequate compensation.  McGhee Irrigation Ditch Co. v. Hudson, 85 Texas, 593, 22 S. W., 398.

While the lines which separate the powers of the three great departments of our government are not always clearly drawn, we find no difficulty in concluding that no power is more properly or certainly attached to the judicial department than that which determines controverted rights to property by means of binding judgments.

It would be hard to state a more patent attempt by the Legislature to confer judicial power on a non-judical tribunal than for the Legislature to enact that such tribunal shall be authorized to

determine cases pending in court between litigants, involving property, as well as such future controversies as but for the act would have to be adjudicated by the courts. Yet, that is the exact purpose and object of articles 5011-½f, 5011-½jj, and 5011-½ll. The provisions of our Constitution were designed to render it impossible for the Legislature to accomplish such a purpose or object, until the people had evidenced their assent by express constitutional authorization.

In discussing legislative power, Mr. Cooley approves the following forceful statement of the Supreme Court of Illinois: "It cannot directly reach the property or vested rights of the citizen by providing for their forfeiture or transfer to another, without trial and judgment in the courts; for to do so would be the exercise of a power which belongs to another branch of the Government, and is forbidden to the legislative." Cooley's Constitutional Limitations, (7th Ed.), p. 132. Here, we have statutes under which, if held valid, the water rights of the citizen could be either forfeited or transferred to another, without any pretence of court action.

It is earnestly argued that the statutes are saved from constitutional infirmity because the action of the Board is final only as to those who desire it to be final. For it is said any dissatisfied claimant is entitled to a court trial *de novo*. The Constitution in its prohibition against conferring on persons in one governmental department power belonging to another contains no exception of instances wherein the latter department may review the acts of the former. The Constitution making no such exception, the courts should not make it.

The Ohio Supreme Court held unconstitutional an act of the Legislature of that state undertaking to give the recorder power to make a determination of certain property rights. In rejecting the contention that the act was valid because of its provisions for a judicial review of the recorder's decisions, that court announced conclusions which are as applicable to the statutes under consideration as to the Ohio act. That court said: "Nor is this objection to the act avoided by the provisions which contemplate a review of or appeal from the action of the recorder. It would, perhaps, be found upon a careful consideration of his powers that they are not all embraced within the provisions for review or appeal. But the assumption that they are so embraced would not validate the act in this respect. The recorder, as a ministerial officer, is incompetent to receive a grant of judicial power from the Legislature. His acts in the attempted exercise of such powers are necessarily nullities. They cannot be effective to impose any obligation or burden upon a citizen, or to deprive him of any right. The act plainly contemplates that the person against whom the recorder decides in the exercise of any of the

powers sought to be conferred must either submit to the adverse decision, or take upon himself the burden of an appeal. In view of the constitutional provision on the subject, he cannot be forced to this alternative. If these are judicial powers, it is admitted that they cannot be vested in the recorder. If they are not judicial, the provisions for an appeal are void, since as was said by this court in Ex parte Logan Branch at Logan of State Bank, 1 Ohio St. 432, 'we have no idea of an appeal except from one court to another.' " State, ex rel. Monnett, v. Guilbert, 56 Ohio St., 628, 38 L. R. A. 528, 529, 60 Am. St., 756.

The principle stated by the Ohio Supreme Court had been previously held by the Illinois Supreme Court to invalidate similar statutes, though the proceedings thereunder of the ministerial officer in Illinois were given no other effect than to start the period of limitations within which the owner was required to assert his property rights in the courts. People ex rel. Kern v. Chase, 165 Ill., 527, 36 L. R. A. 111, 46 N. E., 454.

The statutes cannot be sustained because of the declaration in article 5011-½v that nothing contained therein shall affect, impair or destroy vested rights. The subject matter of the determinations and orders provided for by articles 5011-½f and 5011-½ll are vested rights. If such rights remain unaffected, the Board's determinations and orders are mere nullities, which ought not to be allowed to cloud the title of defendant in error.

The case of Pacific Live Stock Co. v. Oregon Water Co., 241 U. S., 440, 60 L. Ed., 1084, 36 Sup. Ct., 637, is relied on as authority for the proposition that the statutes invest the Board with no judicial power. That decision upholds the Oregon Act regulating proceedings for the ascertainment and adjudication of the relative rights of claimants to water. The basis of the decision is that the Act, as construed by the Supreme Court of Oregon, authorizes the Water Board to do no more than to submit to the court a proper basis for a binding adjudication. The Supreme Court of Oregon had said of the Board's proceedings: "A determination of the water rights to a stream finally ends as a report to the Circuit Court and a final determination by that court." In the opinion of Judge Van Devanter he points out: "In notifying claimants, taking statements of claim, receiving evidence and making an advisory report the board merely paves the way for an adjudication *by the court* of all rights involved." 241 U. S., 451.

The vital distinction between the Texas statutes and those of Oregon, as interpreted by the Supreme Court of that State and by the Supreme Court of the United States, is that here the power to make binding determinations of water rights is attempted to be lodged in

the Board, while there all such power is required to be exercised by the courts.

We do not think we should give controlling effect to the decisions of the Supreme Courts of Wyoming and Nebraska upholding the similar statutes of those States. The Nebraska Supreme Court felt constrained to follow the opinion of the Supreme Court of Wyoming, regarding the latter court's reasoning as convincing. Crawford Co. v. Hathaway, 67 Neb., 325, 60 L. R. A. 906, 10 Am. St., 647, 93 N. W., 751.

The Constitution of Wyoming provided: "There shall be constituted a board of control to be composed of the state engineer and superintendents of water divisions which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution, and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state." When the Wyoming Supreme Court determined that "supervision" of the waters of the State must fail in the absence of an effective ascertainment of priorities in water rights, it would seem that the power of the Board to determine water rights, as derived from the above constitutional provision, could not be reasonably denied. We need only to note the absence in the Texas Constitution of any such provision as that found in Wyoming, to show the essential difference in the legislative authority in the two States to make the attempted grants of power. Farm Inv. Co. v. Carpenter, 9 Wyo., 110, 50 L. R. A. 753, 758, 87 Am. St., 918, 61 Pac., 258. It may be observed, too, that Wyoming rejected the common law doctrine of riparian rights relative to the use of natural waters.

The court's attention is directed by counsel for the Board to the cases of Middleton v. Texas Power & Light Co., 108 Texas, 96, 185 S. W., 556, and Baldacchi v. Goodlet, 145 S. W., 325, as sustaining the power of an executive board, under our Constitution, to adjudicate vested property rights.

The cases announce no such doctrine. They plainly deny that the Legislature could, without express constitutional sanction, delegate power elsewhere than to the courts to adjudicate vested property rights.

The opinion of Chief Justice Phillips is explicit on this point. After stating the terms of the Employers' Liability Act, including those defining the powers of the Industrial Accident Board, the conclusion is announced that no fundamental right of employers was invaded, because the Act gave them the option to adopt its plan of compensation or remain unaffected by it, and attached no consequences to the pursuit of the latter course, except the denial of the right to interpose certain common law defenses. In that connection;

the Court said: "Those defenses are but doctrines or rules of the common law. Rights of property which have been created by the common law can not be taken away by the Legislature. They are protected from destruction by any process except the due process of the law, that is, law in its regular course of administration through courts of justice. But no one has a vested interest in the rules, themselves, of the common law; and it is within the power of the Legislature to change them or entirely repeal them." Coming to consider the effect of the Act on the employees, the opinion proceeds: "Does this deprive the employee of any vested right or property right? A *vested* right of action given by the principles of the common law is a property right and is protected by the Constitution as is other property. The act, however, does not profess to deal with rights of action accruing before its passage. That which is withdrawn from the employee is merely his right of action against his employer, as determinated by the rules of the common law, in the event of his future injury. . . . We rest the decision of this question upon what seems to us is the proposition that no one has any vested or property interest in the rules of the common law, and, therefore, no one is deprived of a constitutional right by their change through legislative enactment."

Baldacchi v. Goodlet, 145 S. W., 327, involved whether an act of the Legislature empowering the State Comptroller to revoke a liquor dealer's license, after a determination by the Comptroller that the dealer had violated the conditions of his application for license, was void, as delegating judicial power to an officer of the executive department of the State government. The act was sustained by the Court of Civil Appeals, on the express ground that "the license being a mere privilege to carry on the business, subject to the will of the grantor, it is not property in the sense which protects it under the Constitution;" and, further, that "it never became a vested property right which the State may not revoke whenever in the exercise of the police power of government it deems such revocation necessary for the protection or for the benefit of society."

In State of Texas v. DeSilva, 105 Texas, 100, 145 S. W., 333, the court approved the opinion in Baldacchi v. Goodlet, remarking: "It would be a useless consumption of time to adduce authorities or arguments to the effect that a license to sell intoxicants is not a property right, but is a privilege granted by the State, which may be revoked."

By an act regulating irrigation in Montana Territory, the Assembly of that Territory granted to certain commissioners power to apportion waters in rivers and streams, having due regard to the legal rights of all claimants. In holding an award of the commissioners void, the Supreme Court of Montana Territory said: "The powers given

this commission by the act under which they conducted their proceedings are clearly judicial. They are empowered by it to apportion the waters in a just and equitable proportion. This required them to determine what was just and equitable between these parties. In the next place the apportionment was to be made with a due regard to the legal rights of all. This required of them to determine what these legal rights were. The organic act of this Territory, which is its fundamental law, limits the powers of legislation, vests judicial power in a supreme court, district courts, probate courts, and in justices of the peace. No tribunal which does not belong to one of these classes is legal. As this commission cannot claim to belong to either one of these, it was a tribunal exercising judicial authority without legal warrant, and its acts are void. The appellant gained no rights whatever by virtue of this award.'' (Thorp v. Woolman, 1 Montana Rpts., 168.)

In order to make the determinations required of the Board of Water Engineers in Texas, they must decide the most intricate questions of law and of fact—questions with respect to the validity and superiority of land titles, questions of contract, questions of boundary, questions of limitations, and questions of prescription. An inquiry involving such questions and resulting in the binding adjudication of property rights is strictly judicial, and we would not uphold the Constitution as it is plainly written were we to sanction the delegation of the power to conduct and to finally determine such an inquiry, to any other tribunal than the courts.

It was pointed out in Missouri, K. & T. R'y. Co., of Texas v. Shannon, 100 Texas, 389, 10 L. R. A. (N. S.), 681, 100 S. W., 141, that it is the peculiar province of our courts ''to hear and determine causes between parties affecting the rights of persons as to their life, liberty and property.''

The Legislature having attempted by the statutes in question to confer on persons belonging to the executive department powers which properly attach to another department, without express permission of the Constitution, the statutes are void.

The judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*

Mr. Justice PIERSON took no part in the decision of this cause.