

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. C. S. Clark, Chairman
Board of Water Engineers
Austin, Texas

Dear Sir:            Opinion No. O-3397
                     Re: Right of an appropriator
                         of water for irrigation
                         purposes to use appro-
                         priated water for lands
                         other than those described
                         in his permit, and related
                         questions.

        We are in receipt of your letter of recent date,
requesting the opinion of this department on the following
questions, which we quote:

        "1.  Is an appropriator of water for irri-
gation purposes limited in his right to use water
for such purpose to the lands described in the
permit?

        "2.  If an appropriator is limited in his
right to use water for irrigation purposes to
lands described in his permit, can the Board
of Water Engineers grant an amendment to an
existing permit so as to permit the permittee
to irrigate lands without increasing the amount
of water previously used, in addition to, or in
lieu of, the lands originally described in the
permit at the time of its issuance by the
Board, and retain his priority of right in the
stream from which he appropriates?

        "3.  Will your answer to Question No. 2,
above, be in any manner modified where the addi-
tional lands sought to be irrigated are in water-
sheds, different from the watersheds containing

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Mr. C. S. Clark, Chairman  - Page 2

the land described in the permit as originally
granted in view of Articles 7589, 7590 and 7591,
R. C. S.?

"4. Can a permittee irrigate lands beyond
the boundaries of the lands described in his
permit by compliance with Article 7495, R.C.S.?"

We are also in receipt of a letter from Mr. Joe
Gorman, wherein he sets out his views concerning the
proper answers to the questions propounded by you and also
a letter from Mr. J. E. Sturrock, statistician for the
Board of Water Engineers, setting out his views in the
premises. We are very grateful to both these gentlemen for
their kind letters and for the excellent citation of au-
thorities they have submitted in support of their contentions.
Both of these communications have been very helpful to us
in our investigation of the authorities pertinent to the
question.

Your questions will be taken up in the order they
were propounded.

In the absence of statutes to the contrary, it is
the general rule that a statutory appropriator of water; so
long as the rights of others are not adversely affected,
may, without losing his priority, change the point of diver-
sion, the means or method of diversion, the place of use,
the nature or purpose of use or the manner or means of
use. 67 Corpus Juris. 1030, and authorities cited therein.

The Texas statutes are silent as to the right of
an appropriator of water for irrigation purposes to irri-
gate lands other than those described and included in his
permit. Ordinarily we would conclude from this lack of
statutory prohibition that, under the rule above stated,
the appropriator would not be so limited.

However, a careful reading of the Texas Statutes
dealing with appropriation of water reveals a uniform in-
sistence by the Legislature that, if the appropriated water
is to be used for irrigation purposes, the land to be
irrigated must be described in the various instruments
required to perfect the appropriation. We find this re-
quirement in the statute covering the contents of the
application, that covering the contents of the notice of
hearing on the permit, and in the statute dealing with the

Mr. C. S. Clark, Chairman - Page 3

contents of the permit itself. The Legislature has set out no such requirement where the water is to be used for other purposes.

Article 7493, Vernon's Annotated Statutes, contains the following language:

". . . if such person's proposed use is for irrigation, a description of the lands proposed to be irrigated, and, as near as may be, the total acreage thereof" . . .

must be included in the application.

Article 7508 reads in part as follows:

". . . if the proposed use is for irrigation, such notice shall contain a general description of the location and area of the land to be irrigated."

Article 7515, prescribing the contents of the permits, includes the following verbiage:

". . . if such appropriation is for irrigation (it must contain) a description and statement of the approximate area of the land to be irrigated." (Parenthetical matter ours).

Article 7532 authorizes the Board of Water Engineers to collect a fee based upon the number of acres to be irrigated when water is appropriated for irrigation purposes.

If it was the legislative intent that an appropriator of water for irrigation purposes should be free to use such water to irrigate any land he chose, we can conceive of no reason for requiring that the land be described in each of these enactments. If it was intended that the appropriator could ignore the fact that a particular tract of land was described in his permit, it must be assumed that the Legislature has required a useless thing. Under well recognized rules of statutory construction we can make no such assumption.

The State of Texas was among the last of the Western States to find it necessary to regulate by statute the use of

Mr. C. S. Clark, Page 4

water from its rivers and streams. It was only natural therefore that it borrowed from enactments in other states in setting up a statutory method of dealing with the problem.

"The Texas Acts are variously reputed to be modeled after the Statutes of Oregon, Wyoming and Nebraska. (See Reports of the Attorney General, 1916-18, page 705; Board v. McKnight, 111 Tex. 82, 229 S. W. 301; McKnight v. Irrigation Company, 207 S. W. 599) . . . The provisions for the adjudication of water rights, which was the chief innovation in the Act of 1917, seems directly copied from that prolific parent, the Wyoming statute; and its closest parallel, the Nebraska Act." 7 T. L. R. 86,99.

We find no Texas cases dealing with the right of an appropriator of water for irrigation purposes to use the water on lands other than those described in his permit.

The rule in Wyoming and Nebraska, the two states from which our laws relating to the adjudication of water rights are derived, is, apparently, that the appropriator is restricted to the lands described in his permit.

In the case of Lincoln Land Co. v. Davis, 27 F. Supp. 1006, the United States District Court for the District of Wyoming, May 1, 1939, said:

"Again, defendant claims . . . the right to irrigate 42 acres of land in Section 33 which he has reclaimed and purports over a period of years to have irrigated through a diversion from plaintiff's ditch. Were such proof sustained as to the land in section 33 it would be of no consequence to the defendant in this proceeding, for the reason that no land in section 33 was included in the original appropriation. The defendant would have no right to irrigate land for which no appropriation had previously been taken out, and certainly the plaintiff would have no right as owner of the permit to grant the use of water for lands other than those to which the appropriation applied. The water belongs to the State and only the use of it is granted to an appropriator in the manner and method specifically permitted." (Underscoring ours).

Mr. C. S. Clark, Page 5

In the case of Farmer's Irrigation Dist. v. Frank, 100 N. W. 286, the Supreme Court of Nebraska said:

"There are two conflicting ideas upon which the laws of the several states and territories relating to the use of waters for the purposes of irrigation are based. One is that any person or individual may appropriate surplus waters which have not theretofore been appropriated, and may use the same to irrigate such lands as he may see fit. This was the basis of our irrigation law in this state until the passage of the Act of 1895 (Laws 1895, p. 244 c. 69). This system tends to breed monopolies, and to lead to antagonisms, and to strife and dissension. Since the land in arid regions is useless for the purpose of agriculture unless water is applied to it, this doctrine makes the landowner dependent upon the owner of the water right, and leads to gross exactions and abuses. The doctrine of private ownership of water for irrigation purposes, disassocia ted from the land to which it is designed to be applied has been proved by long experience to be detrimental to the public welfare. It has proved productive of endless controversies and abuses, and has given rise to interminable litigation. The other doctrine is that the right to the use of water should never be separated from the land to which it is to be applied. 'Where this doctrine prevails, canals and ditches become, like railroads, great semi public utilities, means of conveyance of a public commodity, their owners entitled to adequate compensation for services rendered, but having no ownership in property distributed.' Report on Irrigation in California, U. S. Ag. Dept. 1901. It is unnecessary to set forth here the advantages of this idea. By the adoption of the irrigation law of 1895, which was modeled upon the Wyoming law, this state adopted the latter policy, by which the right to use the water shall not be granted separate from the land to which it is to be applied, and that the right to use the water should attach to the land, and when the land is sold, be sold with it; and for this reason the statute is explicit in requiring a description of the land to be irrigated, and the amount thereof, to be set forth in the application. Section 6782, Vol. 2, Cobbey's Ann. St. 1903, provides: 'Every person,

Mr. C. S. Clark, Page 6

association or corporation hereafter intending
to appropriate any of the public waters of the
State of Nebraska shall, before commencing the
construction, enlargement or extension of any
distributing works, or performing any work in
connection with said appropriation, make an
application to the State Board for a permit to
make such appropriation. Said application shall
set forth the name and postoffice address of the
applicant, the source from which said appropria-
tion shall be made, the amount thereof as near
as may be, location of any proposed work in con-
nection therewith, the time required for their
completion, said time to embrace the period re-
quired for the construction of the ditches thereon,
and the time at which the application of the water
for beneficial purposes shall be made; which
said time shall be limited to that required for
the completion of the work when prosecuted with
diligence, the purpose for which water is to be
supplied, and if for irrigation a description
of the land to be irrigated, and the amount thereof,
and any additional facts which may be required by
the State Board . . ." (Note the similarity with
Articles 7492-7493 VACS) (Underscoring ours).

It is provided by Article 7531, R. C. S. 1925,
that the Board of Water Engineers "may adopt, promulgate
and enforce such rules, regulations and modes of procedure
as it may deem proper for the discharge of the duties
incumbent upon it . . ."

We are advised in your letter that the Board has
uniformly ruled that the appropriator of water for irrigation
purposes may not use such water upon lands other than those
described in his permit, and to this end the Board requires a
full and complete description of all lands proposed to be
irrigated under a permit. See Rules and Regulations of the
Board of Water Engineers, page 15.

The construction placed upon statutes by the admin-
istrative body charged with the duty of enforcing such
statutes has often been held to be controlling. 39 Tex. Jur.235,
Sec. 126.

In the light of the above authorities, it is our
conclusion that your first inquiry should be answered in the
affirmative, and you are so advised.

Mr. C. S. Clark, Page 7

Your second inquiry involves the question of priorities and the powers of the Board to amend an existing permit to include lands other than those described in the original permit. Here again we are confronted with the fact that the Legislature has not in specific language set out a definite rule.

We believe that the power of the Board of Water Engineers to amend a permit in that manner is included within the rule-making power of the Board under Article 7531, supra.

It is generally held that such a change in place of use should be allowed if no other water user is thereby injured. First Security Bank v. State, 49 Idaho, 740, 291 Pac. 1064; City of Lodi v. East Bay Muni. Util. Dist., 60 P. (2d) 439 (California); In Re Water Rights of Des hutes River and Tributaries, 286 P. 563, 134 Or. 623, modified 294 P. 1049, 134 Or. 623, appeal dismissed, Columbia-Deschutes Power Co. v. Strickland, 54 S. Ct. 83, 290 U. S. 590, 78 L. Ed. 520.

Non-riparian lands acquire rights to water by statutory appropriation alone, and the first appropriator in time is first in right. Biggs v. Miller (Civ. App., El Paso, 1912) 147 S. W. 632.

We call your attention to a conference opinion of the Attorney General, dated February 10, 1921, in which this department declared, in answer to a similar inquiry:

"Your inquiry . . . raises the . . . question as to your power and authority to receive and hear at all, whether after notice or otherwise, an application for a change in the use of water from that specified in the original application and permit, or to a use in addition to that stated in the original application and permit. No such power is expressly vested by law in your Board.

"Without discussing the question here, however, we have reached the conclusion, although not without difficulty that the exercise of this power by you is implied by the broad terms and purposes of the law, or is vested in you as an incident to the exercise of the powers vested by law in the Board. We hold, therefore, that in our opinion you have the

Mr. C. S. Clark, Page 8

power to receive and hear an application of the
nature stated by you, and take appropriate action
thereon."

It was recommended in that opinion that the Board
of Water Engineers in considering such an amendment, follow
the procedure outlined by statute for consideration of an
original application. Conference Opinions, Vol. 55, page
149.

We, therefore, answer your second inquiry in the
affirmative.

In answer to your third inquiry, we quote Article
7590, R. C. S., 1925:

"Before any person, association of persons, cor-
poration, water improvement or irrigation district
shall take any water from any natural stream, water
course, or watershed in this State into any other
watershed, such person, association of persons,
corporation, water improvement or irrigation district
shall make application to the Board of Water Engi-
neers for a permit so to take or divert such waters,
and no such permit shall be issued by the Board until
after full hearing before said Board as to the rights
to be affected thereby, and such hearing shall be
held and notice thereof given at such time and such
place, in such mode and manner as the Board may pre-
scribe; and from any decision of the Board an appeal
may be taken to the district court of the county in
which such diversion is proposed to be made, in the
mode and manner prescribed in this chapter for other
appeals from the decision of the Board. (Acts 1917,
p. 230, Sec. 81)."

We do not believe that this article was intended to
deprive an appropriator of any priority he might have acquired
under a previous permit. It merely provides for a special
hearing in the event the water so appropriated is to be used
in a watershed different from that from which the water is
taken.

So long as the rights of other appropriators are not
adversely affected, we believe the Board has the power to

Mr. C. S. Clark, Page 9

grant the appropriator the right to use the water in another watershed and upon a tract of land different from that contained in his permit.

We, therefore, answer your third inquiry in the negative.

By the very language of the statute, Article 7495 is restricted to the "alteration, enlargement, extension or addition to any canal, ditch . . ." and other similar alterations.

This Article reads as follows:

"Nothing in this Act shall be held or construed to require the filing of an application or procuring of any permit for the alteration, enlargement, extension or addition to any canal, ditch or other work that does not contemplate, or will not result in, an increased appropriation, or the use of a larger volume of water, but before making any such alteration, enlargement, extension or addition, the person, association of persons, corporation or irrigation district desiring to make same, shall file with the Board of Water Engineers a detailed statement and plan, for the information of the board, of the work proposed to be done."

We, therefore, answer your fourth inquiry in the negative.

Trusting that we have sufficiently answered your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Peter Maniscalco
Assistant

APPROVE. JUN 24, 1941

PM:BT

acting ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN