**GENERAL LAND OFFICE OF the STATE OF TEXAS, State of Texas and Garry Mauro, Appellants,**

**v.**

**RUTHERFORD OIL CORPORATION, Conoco, Inc. and Ladd Petroleum Corporation, Appellees.**

**No. 3–90–037–CV.**

Court of Appeals of Texas, Austin.

Dec. 19, 1990.

Rehearing Overruled Feb. 6, 1991.

Second Rehearing Overruled March 13, 1991.

Jim Mattox, Atty. Gen., José Manuel Rangel, Liz Bills, Priscilla M. Hubenak, Asst. Attys. Gen., Austin, for appellants.

P.M. Schenkkan, Vinson & Elkins, Tom C. McCall, Lynch, Chappell & Alsup, Austin, for appellees.

Before SHANNON, C.J., and ABOUSSIE and JONES, JJ.

SHANNON, Chief Justice.

Appellant General Land Office and others [1] seek to set aside the summary judgment of the district court of Travis County in a declaratory judgment suit. By its judgment, the district court declared that the GLO is not authorized by Tex.Nat.Resources Code §§ 52.135 and 52.137 to adjudicate contract rights of parties to a mineral lease. Appellees are Rutherford Oil Corporation and others.[2] This Court will affirm the judgment.

The summary judgment proof shows that Rutherford is the lessee and the GLO is the lessor of a state oil and gas lease, M–49829. The construction of the royalty provision of the lease became the subject of a dispute between the parties when the GLO demanded that Rutherford pay an additional $4,371,341.31 in royalties and interest. Rutherford contended that the demand for the additional royalties and interest resulted from a "new" interpretation by the GLO of the royalty provision of the lease.

---

1. Appellants are the General Land Office, the Commissioner of the General Land Office, and the State of Texas. They will be collectively referred to as the General Land Office or as the GLO.

2. Other appellees are Conoco, Inc., and Ladd Petroleum Corporation.

■ Paragraph 3(b) of the lease specifies the basis for computing the state's royalty on gas:

> as a royalty on any gas ... one-sixth (⅙th) of the value of the gross production or at the option of the lessor one-sixth (⅙th) of the gross production, but in no event shall the royalty be based on a price less than the highest market price paid or offered for gas in the general area or the price paid or offered to the producer or processor whichever is the greater.

For purposes of this opinion it is sufficient to state that gas has been produced from the lease since 1963. Rutherford sold the gas pursuant to an arm's-length contract and has paid royalties to the GLO upon the actual contract price received by it. Until 1986, the parties treated the lease as a "market value lease." [3]

In 1986, the GLO notified Rutherford that a royalty deficiency had been assessed on Lease M–49829. As basis for the asserted deficiency, the GLO claimed that Lease M–49829 did not qualify as a market value lease so that the royalties could not be calculated on gross proceeds. Rutherford, on the other hand, contended that the lease was plainly a market value lease and, accordingly, that calculation of royalties was properly based on the price received from gross proceeds.

Rutherford refused GLO's demand for payment of the claimed deficiency. The GLO did not request the attorney general to file suit to determine Rutherford's liability under the lease contract for payment of the assessed deficiency and interest; instead, the GLO served Rutherford with notice to pay the claimed deficiency or to request an agency hearing pursuant to its rules. 31 Tex.Admin.Code § 4.21 *et seq.;* Tex.Nat.Res.Code Ann. §§ 52.135 and 52.-137. Initially, Rutherford requested an agency hearing. The agency hearing proceeded forward and the hearings examiner scheduled a pre-hearing conference.

Rutherford then filed a declaratory judgment suit in the Travis County district court. By its suit, Rutherford sought a declaration that §§ 52.135 and 52.137 and the attendant regulations conferred no authority upon the GLO to adjudicate the parties' rights under the mineral lease contract. Tex.Rev.Civ.Stat.Ann.Ann. art. 6252–13a, § 12. Alternatively, Rutherford requested a declaration that if, indeed, §§ 52.135 and 52.137 conferred authority upon the GLO to adjudicate rights under the mineral lease contract, then such provisions were in violation of Tex. Const. Art. II, § 1 (separation of powers).

Ancillary to its declaratory judgment suit, Rutherford sought a temporary injunction prohibiting the agency from conducting the scheduled hearing. The district court granted the temporary injunction, but later dissolved it. In an interlocutory appeal from the district court's order dissolving the temporary injunction, this Court determined that Rutherford had shown a probable right to recover because, among other things, §§ 52.135 and 52.137 do not empower the GLO to adjudicate mineral lease rights and remanded the cause to district court for re-instatement of the temporary injunction order. *Rutherford Oil v. General Land Office,* 776 S.W.2d 232 (Tex.App.1989, no writ). The GLO did not seek Supreme Court review of that judgment.

With respect to the merits, Rutherford filed a motion for summary judgment seeking a declaration of its rights under the statutes and agency rules as above outlined. In turn, the GLO filed a motion for summary judgment seeking a declaration to the converse of that sought by Rutherford.

---

**3.** Royalties payable under market value leases are based on the price gas would bring if it were free and available for sale. *Exxon Corp. v. Middleton,* 613 S.W.2d 240, 246 (Tex.1981). The General Land Office's rules modified this general rule as follows: "For the purpose of computing and paying royalties to the state based on market value, the market value shall be pre-sumed to be the gross proceeds received pursuant to a bona fide contract entered into at arm's length between nonaffiliated parties of adverse economic interests." 10 Tex.Reg. 689 (1985) [31 Tex.Admin.Code § 3.10(e)(1), since repealed, now 31 Tex.Admin.Code § 9.7(b)(1)(E)(i) (Supp. 1990–1991) ].

Upon hearing, the district court rendered summary judgment declaring that the GLO "does not have the authority under [§§ 52.135 and 52.137] to adjudicate the contract rights of the parties to [a] state mineral lease. The administrative hearings which the GLO proposes to hold involving [Rutherford] would violate this holding. Only courts may adjudicate such contract rights." The district court then ordered that Rutherford's motion for summary judgment be "granted only to the extent that the court rules that the GLO does not have the authority under [§§ 52.135 and 52.137] to adjudicate the contract rights of parties to a mineral lease, and [the motion be] denied in all other respects." The district court denied the GLO's motion for summary judgment.

Section 52.135 provides in pertinent part:

(a) The books and accounts, receipts, and discharges of all lines, tanks, pools, and meters and all contracts and other records relating to the production, transportation, sale, and marketing of the oil and gas are subject at any time to inspection and examination by the commissioner and the attorney general and governor or their representatives.

(b) If, after inspection and examination of books, accounts, reports, or other records, the commissioner or his representative determines that additional royalties are due under a lease of state land or minerals, the commissioner shall send to the lessee by certified mail, return receipt requested, an audit billing notice notifying the lessee of such additional royalties, and interest and penalty due and of the reasons for such determination.

(c) The lessee shall have 30 days from the date of the receipt of such audit billing notice in which to pay such audit deficiency assessment or to request a hearing before the commissioner or his representative for redetermination of such assessment. A statement of grounds setting out in detail the lessee's reasons for disagreement with such assessment and the factual and legal grounds on which the claim is based must be submitted by a lessee with its request for a hearing. Such hearing shall be conducted in accordance with the rules and procedures established by the commissioner.

Section 52.137 sets up the procedure for review by the district court of Travis County of the Land Commissioner's final order fixing an audit deficiency assessment. Under such procedure, the complaining lessee is required to pay to the Commissioner the sum claimed due under written protest. Suit must be filed in Travis County within a specified time and the issues at trial are limited to those stated in the protest. Trial is de novo and the "substantial evidence rule" does not apply.

■ The nub of GLO's argument is that §§ 52.135 and 52.137 and the attendant agency rules, properly construed, permit the GLO to "interpret" (adjudicate) the mineral lease provision in conducting its audit. In our opinion, the construction urged by the GLO would render the legislation unconstitutional. Only courts are empowered to determine controverted property rights. Tex.Const.Ann. art. II, § 1 (1984) and art. V, § 1 (Supp.1989); *Railroad Commission v. City of Austin,* 524 S.W.2d 262, 267–268 (Tex.1975); *Magnolia Petroleum Co. v. Railroad Commission,* 141 Tex. 96, 170 S.W.2d 189, 191 (1943); *Board of Water Engineers v. McKnight,* 111 Tex. 82, 229 S.W. 301, 304 (1921). The Supreme Court has written:

While the lines which separate the powers of the three great departments of our government are not always clearly drawn, we find no difficulty in concluding that no power is more properly or certainly attached to the judicial department than that which determines controverted rights to property by means of binding judgments.

*McKnight,* 229 S.W. at 304.

■ We now turn to an examination of §§ 52.135 and 52.137. At the threshold, we observe the age-old principal that it is the court's duty to construe statutes in a manner which avoids creation of serious doubts about the constitutionality of the statute.

*FSLIC v. Glen Ridge I Condominiums,* 750 S.W.2d 757, 759 (Tex.1988). Equally well established is the precept that an agency has only those powers granted by statute together with those necessarily implied from the authority conferred or duties imposed. *Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158 (1961); *Nueces Co. Water Control and Improvement Dist. v. Tex. Water Rts. Comm'n,* 481 S.W.2d 924 (Tex.Civ.App.1972, writ ref'd n.r.e.).

As we understand, since 1919, the Natural Resources Code and its predecessor statutes authorized the GLO to inspect and examine the books and records of state mineral lessees. Before 1986, however, if the GLO discovered errors in the state lessee's compliance with the lease, the agency was required to request the attorney general to file suit and obtain a judgment to correct those errors.

■ As amended in 1986, § 52.135 not only permits the GLO to examine the books and records of lessees for errors or discrepancies, but also, in the event the GLO discovers an error that led to a past deficiency in royalty payments, § 52.135(b) allows the GLO to send the lessee an audit billing notice. If the lessee then refuses to pay, § 52.135(c) empowers the GLO to conduct a hearing to determine a deficiency *vel non,* all without the necessity for the attorney general filing suit. Section 52.135(a) enumerates the kind of records upon which the GLO may base an audit deficiency assessment. ("The books and accounts, receipts, and discharges of all lines, tanks, pools, and meters and all contracts and other records relating to the production, transportation, sale and marketing of the oil and gas.") The list of records permitted to be examined does not include the mineral lease itself. Although the GLO will most probably refer to the mineral lease in the calculation of the amount of royalties due, there is no indication that from the language of § 52.135 that the legislature intended for the GLO make royalty deficiency assessments based upon disputed lease provisions. In our view, the statutory enumeration only contemplates an examination for accounting-type errors resulting in royalty deficiencies.

■ That the legislature intended that the role of the GLO under § 52.135 is to insure compliance of the lessee with undisputed lease interpretations is emphasized by use of the word "audit" throughout the section. The ordinary meaning of "audit" does not denote a legal inquiry or construction of a writing; rather, an audit is "a formal or official examination and verification of books and .accounts." Webster's Third New International Dictionary (Unabridged). An audit (as used in the by-laws of a corporation) means "a formal or official examination and verification of the books of account by an auditor." *May v. Wilcox Furniture Downtown, Inc.,* 450 S.W.2d 734, 739 (Tex.Civ.App.1969, writ ref'd n.r.e.).

The GLO's agency proceeding, in this cause, does not qualify as an audit as that word is commonly used. The GLO's audit billing notices here are not based on its inspection and examination of books and records of lessees regarding production from their leases. To the contrary, the dispute in this cause hinges on the GLO's adoption of a legal position concerning the meaning of the lease royalty language.

Presuming §§ 52.135 and 52.137 to be valid and resolving all doubts in favor of their constitutionality, *Duncan v. Gabler,* 147 Tex. 229, 215 S.W.2d 155 (1948), this Court agrees with the district court's declaration that these sections do not empower the GLO to adjudicate the rights of the parties to a mineral lease.

The judgment of the district court is affirmed.