# IN THE SUPREME COURT OF TEXAS

No. 14-0038

IN RE THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**PER CURIAM**

The Office of the Attorney General (OAG) filed suit against Cornelius Jackson, seeking to establish his paternity and to compel him to pay child support. *See* TEX. FAM. CODE §§ 102.007 (providing a child-support cause of action to the State's Title IV-D agency); 231.001 (designating OAG as Texas' Title IV-D agency); *see also* §§ 160.201(b)(3) (authorizing the establishment of paternity through civil adjudication); 160.601(a) (same); 160.602(a)(4) (authorizing the State's "support enforcement agency or another government agency authorized by law" to maintain the proceeding to adjudicate paternity).

After an evidentiary hearing, the associate judge issued a temporary order establishing the parent-child relationship. *See id*. § 201.104(b) (authorizing associate judge to render any non-final order on the merits of the case). The associate judge also ordered Jackson to pay $500 per month in child support. In addition, the associate judge denied OAG's request to prevent disclosure of certain of Jackson's and the child's personal information. Finally, the associate judge determined no basis existed to show a history of family violence and ordered OAG to remove the family violence indicator from Jackson's file and OAG's system.

The trial court denied OAG's request for de novo review, *see id.* § 201.1042, and affirmed and adopted the associate judge's temporary order. OAG unsuccessfully sought mandamus relief

in the court of appeals from the trial court's order regarding the removal of the family violence indicator. OAG now seeks mandamus relief in this Court.

Ordinarily, a final order must include each party's social security and driver's license numbers, current residence and mailing addresses, home and work telephone numbers, and the name and address of any employers. *Id.* § 105.006(a). However, a trial court may, after notice and a hearing, order this information withheld if it is "likely to cause the child or a conservator harassment, abuse, serious harm, or injury." *Id*. § 105.006(c). Under the same statute, a trial court may "render any other order the court considers necessary." *Id*. § 105.006(c)(2).

At the hearing to determine whether to disclose this information, OAG argued that nondisclosure of the parties' personal information was appropriate because of the potential risk of harm. However, the associate judge found that no grounds supported nondisclosure, and OAG does not complain of the nondisclosure ruling. The only issue before us is whether the trial court erred when it ordered OAG to remove the family violence indicator from Jackson's files and OAG's system, presumably under the authority of the Family Code's "any other order" phrase in section 105.006(c)(2). We conclude the trial court erred and conditionally grant mandamus relief.

Federal law requires states participating in the federal child support enforcement program to maintain a "family violence indicator" in the states' support enforcement reporting systems. *See* 42 U.S.C. § 653(h)(2) (authorizing the Secretary of the Department of Health and Human Services to specify through regulations the required information to be collected); 45 C.F.R. § 307.11(f)(1)(x) (including a "family violence indicator" in the required information). As a participant in the federal program, Texas must follow the federal guidelines, which are located in Part D of Title IV of the federal Social Security Act. 42 U.S.C. § 651 *et seq*. Under the program's guidelines, Texas "at a minimum" must establish a state registry consisting of "[e]very IV-D case

receiving child support enforcement services under an approved State plan; and . . . [e]very support order established or modified in the State on or after October 1, 1998." 45 C.F.R. §§ 307.11; 307.11(e)(2)(i)–(ii). The state case registry also must contain certain "[s]tandardized data elements" for every program participant. *Id*. § 307.11(e)(3). These standardized elements "shall include . . . Names . . . Social security numbers . . . Dates of birth . . . Case identification numbers . . . Other uniform identification numbers . . . [and] *Data elements required under paragraph (f)(1) of this section* necessary for the operation of the Federal case registry." *Id*. § 307.11(e)(3)(i)–(vi) (emphasis added).

Paragraph (f)(1), in turn, requires the participating states to furnish "information which would necessitate adding or removing a Family Violence indicator." *See id*. § 307.11(f)(1)(i)–(xiv). This information includes the standardized data mentioned above, but it adds one additional relevant element: the "Family violence indicator (domestic violence or child abuse)." *Id*. § 307.11(f)(1)(x).

This information required under paragraph (f)(1) is collected "for purposes of sharing and comparing with, and receiving information from, other data bases and information comparison services, to obtain or provide information necessary to enable the State, other States, the [Office of Child Support Enforcement] or other Federal agencies to carry out this chapter." *Id*. § 307.11(f).

As Texas' designated Title IV-D agency, OAG must collect, store, and maintain this required information, which includes the family violence indicator. *See* TEX. FAM. CODE § 231.001 (designating OAG as the State's Title IV-D agency).

*      *      *

OAG contends that the trial court lacked authority to order it to remove the family violence indicator from its files. Jackson responds, arguing that the trial court's authority stems from the "any other order" phrase found in the Family Code. *See id*. § 105.006(c)(2).

We review questions of statutory construction de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We construe the words of a statute according to their plain meaning, *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004), and in the context of the statute's surrounding provisions, *see* TEX. GOV'T CODE § 311.011(a).

When construing statutes, or anything else, one cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases. The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive.

The parties cite no statute that speaks to the degree of either OAG's or a trial court's discretion to determine whether the indicator should be included in OAG's file. OAG contends—and both the trial judge and Jackson concede—that other statutes, *see, e.g.*, 42 U.S.C. §§ 653(b)(2); 654(26)(C); TEX. FAM. CODE § 231.108(e), implicate a "reason to believe" and "reasonable evidence" standard, giving OAG discretion to assign the indicator to a case. Under OAG's view, this discretion enhances its ability to protect the release of information when disclosure might result in physical or emotional harm to a person.

Conversely, the trial judge and Jackson argue that OAG's determination to assign the indicator is simply a preliminary administrative matter subject to judicial review. They contend the trial court maintains discretion over the existence of the indicator, as necessary to issue

4

protective orders and prevent disclosure of certain personal information. They cite both state and federal statutory schemes for analogous support.

We are unpersuaded by the trial judge's and Jackson's reasoning, and the statutes upon which they rely fail to show analogous support.

The federal and state statutes cited by the trial judge and Jackson indeed give the trial court discretion to *consider* family violence—i.e., to weigh the disclosure of protected information—but these statutes fall short of authorizing the trial court to order removal of the indicator. The Family Code authorizes the trial court to decide whether to disclose protected information once a case has been designated with the indicator, but the authority to assign the indicator to a case rests with OAG. All the statutes confirm as much. The Legislature has chosen to give OAG discretion to designate a case with the family violence indicator, and has not chosen to allow trial courts to intervene, except to weigh the designation in considering a request for disclosure.

Taken out of context, the Family Code's "any other order" language might seem a sweeping provision of power, giving a trial court carte blanche to do as it pleases. *See* TEX. FAM. CODE § 105.006(c)(2). But studied in context—in light of the text and structure of surrounding and related provisions—there is no question that "any other order" cannot bear the broad meaning ascribed by the trial court. Rather, a trial court may issue "any other order" only to protect the parties likely to be harmed by disclosure of protected information. *See id.* § 105.006(c). The trial court's misreading of subsection (c)(2) is foreclosed by statutory context because subsection (c)(2) is clearly limited to the risks of harm noted in subsection (c). *See id.* § 105.006(c)(2) ("If a court finds . . . that [disclosing] the information required by this section to another party is likely to cause the child or a conservator harassment, abuse, serious harm, or injury, the court may . . . render any other order the court considers necessary.").

5

Jackson and the trial judge also frame the issue as one of procedural due process, contending that a non-custodial parent whose case has been designated with the indicator loses certain "core" rights, which necessitates judicial review. The loss of "core" rights to which Jackson and the trial judge allude would be derived from a judicial decision or an administrative determination that disclosure of the information at issue would be likely to cause harm.

But at no point does OAG argue that assigning the indicator to a case within its internal files serves as a determination that a nondisclosure order is warranted. Rather, OAG simply argues that it has the sole authority to determine whether to include (and keep) the indicator within its files as a signal that family violence may have occurred and that precautions may therefore be appropriate.

It is well settled that trial courts may review an administrative action only if a statute provides a right to judicial review, or the action adversely affects a vested property right or otherwise violates a constitutional right. *Stone v. Tex. Liquor Control Bd.*, 417 S.W.2d 385, 385–86 (Tex. 1967). Even assuming that OAG's indicator designation can be properly categorized as an "administrative action," and that Jackson sought judicial review of OAG's decision to apply the indicator, the parties have not directed us to any authority expressly providing for the right to review the designation. And because Jackson did not allege a violation of a vested property right or a constitutional right, he is not entitled to seek judicial review of OAG's decision to apply the indicator.

\* \* \*

In effect, the trial court in this case decided that the family violence indicator was not necessary and determined that it should be removed. But the trial court lacked authority to order OAG to remove the indicator from its files. OAG is assigned the indicator designation; the trial

court is responsible for weighing that designation when asked to disclose protected information. These two lines do not intersect.

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant the writ of mandamus and direct the trial court to vacate its order. We are confident the trial court will comply, and the writ will issue only if it does not.

**OPINION DELIVERED:** January 30, 2015