# Supreme Court of Texas

No. 21-0049

Pape Partners, Ltd., Glenn R. Pape and Kenneth W. Pape,

*Petitioners*,

v.

DRR Family Properties LP,

*Respondent*

On Petition for Review from the
Court of Appeals for the Tenth District of Texas

**Argued March 24, 2022**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

By statute, the Texas Commission on Environmental Quality (TCEQ) "has general jurisdiction over . . . water and water rights including the issuance of water rights permits[] [and] water rights adjudication".[1] The question before us is whether this jurisdiction includes the authority to adjudicate conflicting claims to ownership of surface-water rights. We hold that the adjudication of such claims is for

---

[1] TEX. WATER CODE § 5.013(a)(1).

the courts, not the agency. We reverse the judgment of the court of appeals[2] and remand this case to the trial court for further proceedings.

# I

## A

In 2014, petitioners Pape Partners, Ltd., Glenn R. Pape, and Kenneth W. Pape (collectively, Pape)[3] purchased from Lola Robinson and her closely held corporation, Swirl Investments, a 1,086-acre farm in McLennan County, including the right to use water diverted from the Brazos River for irrigation under a permit issued by TCEQ. As explained further below, TCEQ issues a surface-water-use permit—called a certificate of adjudication—to a person whose ownership of "rights to the waters of a stream" has been finally determined by a district court after both an initial administrative process and then a final judicial process.[4] Robinson warranted to Pape that TCEQ had recognized her exclusive right to the water covered by the permit.

Robinson first obtained water rights for the farm in two permits issued in 1986. The permits did not cover an adjacent 250-acre tract that Robinson owned, which had no direct river access or any appurtenant water rights. In 1990, Robinson conveyed the 250-acre tract to Swirl. In 1997, after proceedings initiated by Robinson, TCEQ replaced the two 1986 permits with a single amended permit. The amended permit granted Robinson, individually, the authority to irrigate both the farm and the adjacent tract from water-diversion points located on the farm.

---

[2] 623 S.W.3d 436 (Tex. App.—Waco 2020) (2-1).

[3] Pape is pronounced like *poppy*.

[4] TEX. WATER CODE § 11.323(a).

Pape alleges that Robinson failed to inform the commission that she no longer owned the 250-acre tract. After the amended permit was issued, the 250-acre tract changed hands several more times. In 2012, it was conveyed to respondent DRR Family Properties, LP.

TCEQ rules provide a process for updating the commission when water rights have been transferred. The purchaser must record in the county clerk's office "[t]he written instrument evidencing a water right ownership transfer" and then submit to the commission's executive director copies "of the recorded instruments establishing the complete chain of title . . . along with a completed Change of Ownership Form and an ownership recording fee".[5]

After Pape submitted its ownership documentation, the executive director updated the commission's records to reflect that Pape owned the water rights appurtenant to the farm. But later, TCEQ identified DRR as the owner of the 250-acre parcel for which Robinson was granted irrigation rights in the 1997 amended permit, and it invited DRR to submit its own change-of-ownership application and documentation. Other landowners who purchased nearby parcels with chains of title traceable to Robinson also filed ownership documentation after being notified by the commission of potential water rights.

In late 2015, acting on DRR's application, the executive director changed TCEQ's records again, this time to reflect that the water rights recorded in the amended permit were owned proportionally by Pape,

---

[5] 30 TEX. ADMIN. CODE § 297.83.

DRR, and Robinson. The update had the effect of reducing the amount of land Pape is authorized to irrigate from 1,086 acres to 821 acres.

Pape filed a motion to overturn the director's decision in accordance with the commission's rules.[6] The director's office prepared a response for the full commission, which stressed that "[t]he Executive Director's review for change of ownership requests is ministerial." The response explained:

> [I]t is unclear whether Pape Partners is entitled to any other relief at the agency level. There is no indication in statute or rule that a change of ownership request requires anything other than a ministerial act from the Commission, recognizing that ownership has changed. There is no right to a contested case hearing on a change of ownership request, which requires no public notice. . . .

> The determination of whether a complete chain of title has been established between an owner of record and a new owner is made by the Executive Director based upon the documentation submitted with a change of ownership request . . . .

Pape's motion was overruled by operation of law in early 2016.[7]

**B**

Pape sued DRR, Robinson, Swirl, and several individual landowners seeking declarations that it is the sole owner of water rights appurtenant to the 1,086-acre farm and that none of the defendants possess water rights recognized by the 1997 amended permit. With respect to the 250-acre tract now owned by DRR, Pape argues that because Robinson did not own the tract when the amended permit was

---

[6] *Id.* § 50.139(a).

[7] *See id.* § 50.139(f)(2).

4

issued, the surface-water rights granted her with respect to that tract were personal to her and did not pass with subsequent conveyances of the land.[8] Pape also pleaded alternative claims for adverse possession, to quiet title, and for breach of contract and fraud.

DRR moved to dismiss Pape's claims for lack of subject-matter jurisdiction, arguing that TCEQ has exclusive original jurisdiction to determine water-ownership rights and that under TCEQ's enabling statute, Pape could have sued for judicial review of the commission's action on DRR's application within 30 days but did not.[9] The trial court granted DRR's motion to dismiss and then severed all claims against it into a separate suit to permit an immediate appeal.[10]

A divided court of appeals affirmed. The majority concluded, with no supporting analysis, that "the regulatory scheme behind surface water permits is pervasive and indicative of the Legislature's intent that jurisdiction over the adjudication of surface water permits is ceded to

---

[8] "[T]he right to use water for the purpose of irrigation is appurtenant to the land authorized to be irrigated, and a conveyance of land with an appurtenant water right also conveys the water right unless expressly reserved or excepted; provided, however, that *if the water right has been granted for the irrigation of land not owned by the applicant, such a water right is personal to the permittee and does not pass with a conveyance of the land.*" *Id.* § 297.81(a) (emphasis added).

[9] *See* TEX. WATER CODE § 5.351(a) (providing for judicial review of "a ruling, order, decision, or other act of the commission").

[10] An individual defendant, Champagne, filed a motion to dismiss on the same grounds as DRR, which was granted by the trial court. Champagne appeared as an appellee in the court of appeals but was dismissed by agreement before the court rendered judgment.

the TCEQ."[11] It thus agreed with DRR that Pape's only remedy was a suit for judicial review under Chapter 5 of the Water Code, which by then was time-barred. We granted Pape's petition for review, which is supported by amicus submissions from TCEQ itself and three agricultural associations.[12]

## II

## A

We start with the basic, constitutional rule that "[a] district court has subject-matter jurisdiction to resolve disputes unless the Legislature divests it of that jurisdiction."[13] "District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body."[14] Thus, "we presume that [the] district court has subject-matter jurisdiction" to resolve a claim.[15] And historically, "the power to determine controverted rights to property" has been "vested in the judicial branch."[16]

---

[11] 623 S.W.3d at 440.

[12] The Texas Water Conservation Association, the Texas and Southwestern Cattle Raisers Association, and the Texas Farm Bureau.

[13] *In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 44 (Tex. 2021) (citing *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004)).

[14] TEX. CONST. art. V, § 8.

[15] *Oncor*, 630 S.W.3d at 44.

[16] *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 635 (Tex. 1996) (citing *Bd. of Water Eng'rs v. McKnight*, 229 S.W. 301, 304 (Tex. 1921)).

By contrast, "there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the [Legislature], in clear and express statutory language, [has] confer[red] upon them."[17] "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers."[18] Because of the presumption in favor of district-court jurisdiction and the narrowness of administrative-agency jurisdiction, "the burden to demonstrate that exclusive jurisdiction rests with an administrative agency falls on the party resisting the district court's jurisdiction."[19]

"Whether an agency has exclusive jurisdiction depends on statutory interpretation."[20] Specifically, we look for either an express grant of exclusive original jurisdiction to the agency or a "pervasive regulatory scheme" indicating that the Legislature intended "the [administrative] process to be the exclusive means of remedying the problem" presented.[21] The relevant statutes here are in Chapters 5 and

---

[17] *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (collecting cases); *see also Oncor*, 630 S.W.3d at 45 (citing *Subaru*).

[18] *Subaru*, 84 S.W.3d at 220.

[19] *Oncor*, 630 S.W.3d at 44-45 (citing *Entergy*, 142 S.W.3d at 322).

[20] *Entergy*, 142 S.W.3d at 322 (citing *Subaru*, 84 S.W.3d at 221).

[21] *Id.* (quoting *Subaru*, 84 S.W.3d at 221).

11 of the Water Code.[22] Our analysis begins with their plain text.[23] But "[w]hen construing statutes, or anything else, one cannot divorce text from context." [24]

## B

Chapter 5 is TCEQ's enabling statute. It sets forth the commission's role as "the agency of the state given primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment."[25] And it contains general but detailed rules about the commission's membership, governance, staff, and operations. DRR argues that TCEQ's exclusive original jurisdiction to decide conflicting claims to surface-water rights is established in Section 5.013, titled "General Jurisdiction of Commission". Subsection (a) lists twelve areas that the Legislature has granted the commission "general jurisdiction over". The first area is:

> water and water rights including the issuance of water

---

[22] Our opinion in *City of Marshall v. City of Uncertain* documented the history of Texas water law from the Spanish or Mexican law that governed pre-independence, to the English common law adopted post-independence, and on through the series of statutory schemes the Legislature began adopting in the late 1800s. 206 S.W.3d 97, 101-103 (Tex. 2006). We described this history as "a hodge-podge of historical and contradictory water rights systems." *Id.* at 101 (citation omitted). Fortunately, we need only examine two chapters of the Water Code to decide the issue presented here.

[23] *See, e.g.*, *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022) ("In construing a statute, our objective is to determine and give effect to the Legislature's intent. We begin by examining the plain meaning of the statute's language." (citations and quotation marks omitted)).

[24] *In re Off. of the Att'y Gen.*, 456 S.W.3d 153, 155 (Tex. 2015).

[25] TEX. WATER CODE § 5.012.

rights permits, *water rights adjudication*, cancellation of water rights, and enforcement of water rights[.][26]

The other areas of the commission's general jurisdiction are:

- supervision of conservation districts established under the Texas Constitution;

- determining "the feasibility of certain federal projects";

- administering programs that regulate water quality, dam construction, hazardous waste, injection wells, underground water, and regional waste disposal;

- duties assigned to the commission in several chapters of the Health and Safety Code; and

- "any other areas assigned to the commission by this code and other laws of this state."[27]

Seven subchapters later, Section 5.351 provides that "[a] person affected by a ruling, order, decision, or other act of the commission" may, within 30 days, file a suit for judicial review in Travis County district court.[28]  Because this section "does not specify the standard of review", we have applied an abuse of discretion standard to a suit under Section 5.351 that did not arise from a contested case.[29] DRR argues that the reference to water rights adjudication in Section 5.013(a) grants TCEQ exclusive jurisdiction to decide conflicting claims to water rights. DRR also contends that Pape should have sought judicial review of TCEQ's actions on DRR's application under Section 5.351 within the 30-day

---

[26] *Id.* § 5.013(a)(1) (emphasis added).

[27] *Id.* § 5.013(a)(2)-(12).

[28] *Id.* § 5.351(a)-(b).

[29] *Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Env't Quality*, 576 S.W.3d 374, 383 (Tex. 2019).

9

window provided for in that section.[30]

## C

*Water rights adjudication* is not defined in Chapter 5 or even mentioned again after Section 5.013. But Chapter 11 is entirely devoted to water rights and their adjudication. Its opening provisions paint the water-rights-ownership landscape: The water in or provided by rivers, streams, lakes, bays, the Gulf of Mexico, storms, floods, rain, canyons, ravines, depressions, and watersheds "is the property of the state."[31] These waters "are held in trust for the public, and the right to use state water may be appropriated only as expressly authorized by law."[32]

Subchapter G codifies the Water Rights Adjudication Act.[33] Its purpose is to promote "[t]he conservation and best utilization of the water resources of this state" by "requir[ing] recordation with the commission of claims of water rights which are presently unrecorded . . . and . . . provid[ing] for the adjudication and

---

[30] DRR makes an alternative argument that Pape could have requested a contested-case hearing and then pursued judicial review under the Administrative Procedure Act, TEX. GOV'T CODE §§ 2001.171-2001.176. The commission's rules address the procedure for requesting a contested-case hearing, but they also make clear that a contested-case hearing must be authorized by "other laws." 30 TEX. ADMIN. CODE § 55.101(f)(6). DRR has not pointed to any statutory authorization for a contested-case hearing on a change of ownership submitted to the executive director, and we have found none. Furthermore, as explained above, TCEQ took the position in its response to Pape's motion to overturn the director's decision that a contested-case hearing was not available to Pape.

[31] TEX. WATER CODE § 11.021(a).

[32] *Id.* § 11.0235(a); *see also id.* § 11.023(a)(2) (listing "agricultural uses" among the purposes for which water may be appropriated).

[33] *Id.* §§ 11.301-11.341.

administration of water rights to the end that the surface-water resources of the state may be put to their greatest beneficial use."[34] The provisions that follow explain the administrative process in which water rights are adjudicated. Read together, they make clear that the Legislature has used *water rights adjudication* as a term of art for the commission's process of allocating the rights to the water of a particular source in a manner that is consistent with the public interest. *Adjudication* is shorthand for the commission's decision to issue water-rights permits for a particular "stream or segment". A stream or segment that has been adjudicated is one for which the commission has issued the permits known as certificates of adjudication.

After a petition for adjudication is filed, "the commission . . . consider[s] whether the adjudication would be in the public interest."[35] "If the commission finds that an adjudication would be in the public interest," then its executive director gathers technical data, which may include maps or plats showing "the course of the stream or segment and the location of reservoirs, diversion works, and places of use, including lands which are being irrigated or have facilities for irrigation."[36] The commission publishes a notice[37] after which "[e]very person claiming a water right . . . from the stream or segment under adjudication shall file a sworn claim with the commission" that includes

---

[34] *Id.* § 11.302.

[35] *Id.* § 11.305(a).

[36] *Id.* § 11.305(a)-(b).

[37] *Id.* § 11.306.

11

the location of their property and other relevant information.[38] The commission holds a hearing,[39] "make[s] a preliminary determination of the claims to water rights under adjudication",[40] holds another hearing on any contests filed,[41] makes a final determination,[42] and considers applications for rehearing.[43]

Finally, there are proceedings "in [the] district court of any county in which the stream or segment under adjudication is located"[44]—not necessarily the Travis County district court, where an appeal taken under Chapter 5 would be filed.[45] The commission files with the court its final determination and all the evidence presented, any party to the administrative proceedings can file exceptions, and the court will hold a hearing.[46] But the statute mandates that the court "determine all issues of law and fact independently of the commission's determination."[47] "The substantial evidence rule shall not be used."[48] The district court's "final decree in every water right adjudication is final and conclusive as

---

[38] *Id.* § 11.307(a)(1)-(5).

[39] *Id.* § 11.308.

[40] *Id.* § 11.309(a).

[41] *Id.* §§ 11.313-11.314.

[42] *Id.* § 11.315.

[43] *Id.* § 11.316.

[44] *Id.* § 11.317(a).

[45] *See id.* §§ 5.351, 5.354.

[46] *See id.* §§ 11.317-11.319.

[47] *Id.* § 11.320(a).

[48] *Id.*

to all existing and prior rights and claims to the water rights in the adjudicated stream or segment of a stream."[49] The decree is even "binding on all claimants to water rights outside the adjudicated stream or segment of a stream."[50] After the district court proceedings are completed and any appeals have been exhausted,[51] "the commission shall issue to each person adjudicated a water right a certificate of adjudication"[52]—or permit—which is recorded in the county clerk's office.[53] After three years, the permit holder "acquires title" to the water rights allocated him,[54] and they become permanent rights that "pass[] with the title to land."[55] The administrative and judicial processes outlined in the Water Rights Adjudication Act are the same processes that produced the permits that TCEQ issued to Robinson.

## D

Reading these statutes' plain text together and in context makes clear that the Legislature's grant of jurisdiction to TCEQ in Section 5.013(a)(1) over "water and water rights including the issuance of water rights permits, water rights adjudication, cancellation of water rights, and enforcement of water rights" is a reference to Chapter 11 and the Water Rights Adjudication Act specifically. Nothing in that Act gives

---

[49] *Id.* § 11.322(d).

[50] *Id.*

[51] *See id.* § 11.322(c).

[52] *Id.* § 11.323(a).

[53] *Id.* § 11.324(a).

[54] *Id.* § 11.029.

[55] *Id.* § 11.040(a).

TCEQ authority to decide conflicting claims to water rights acquired with the title to land. Indeed, the administrative process that Pape initiated after purchasing Robinson's farm is provided for not by statute but by two of the commission's administrative rules. All the rules say is that "[a]n owner of a water right . . . shall promptly inform the executive director of any transfer of water right or change of the owner's address"[56] and then file a form, chain-of-title documents, and a fee with the director.[57]

TCEQ agrees. In an amicus filing, the commission explains that "[t]he term 'water rights adjudication' referenced [in Section 5.013(a)(1)] is a term of art under the Texas Water Code and relates to the Commission's issuance of certificates of adjudication" that entail the commission's "determining the amount of use, place of use, purpose of use, point of diversion, rate of diversion, and where appropriate, the acreage to be irrigated."[58] This is, in TCEQ's own words, an "administrative record-keeping function".[59] Only a judicial process can determine property ownership. [60]

---

[56] 30 TEX. ADMIN. CODE § 297.82.

[57] *Id.* § 297.83.

[58] Amicus Curiae Br. of TCEQ at 1.

[59] *Id.* at 2.

[60] Pape also argues that the Legislature's giving TCEQ jurisdiction over disputes about the title of real property would violate the constitutional doctrine of Separation of Powers. *See* TEX. CONST. art. II, § 1; *McKnight*, 229 S.W. at 307 (declaring unconstitutional a statute giving a TCEQ predecessor agency the right to adjudicate conflicting claims to surface-water rights). In the court of appeals' view, the doctrine posed no obstacle to its interpretation of the Water Code because another constitutional provision, Article 16,

*      *      *      *      *

We hold that TCEQ lacks jurisdiction to decide conflicting claims of ownership to surface-water rights. Accordingly, we reverse the court of appeals' judgment and remand this case to the trial court for further proceedings.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** May 20, 2022

---

Section 59, empowers the Legislature to delegate the resolution of property disputes to TCEQ. *See* 623 S.W.3d at 441-442. Because we conclude that the Water Code does not authorize TCEQ to resolve property disputes, we need not address this part of the court of appeals' analysis.