**Opinion issued May 7, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00500-CV

———————————

## IN THE MATTER OF J.J.

———————————

**On Appeal from the 272nd District Court**
**Brazos County, Texas[1]**
**Trial Court Case No. 242-J-17**

———————————

### MEMORANDUM OPINION ON REHEARING

---

[1]  Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 22–9050 (Tex. June 30, 2022); *see also* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases); TEX. R. APP. P. 41.3 ("In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court . . . .").

Appellant, J.J., has a filed a motion for rehearing of our August 3, 2023 opinion and judgment.[2] We grant the motion for rehearing, withdraw our opinion and judgment of August 3, 2023, and issue this opinion and new judgment in their stead. The disposition remains the same.

Appellant challenges the juvenile court's order requiring him to publicly register as a sex offender under Texas Code of Criminal Procedure chapter 62.[3] In his sole issue, appellant contends that the juvenile court erred in ordering him to publicly register as a sex offender.

We affirm.

### Background

In February 2019, appellant, pursuant to an agreed punishment recommendation with the State, pleaded true to two counts of delinquent conduct consisting of the aggravated sexual assault of two children under the age of fourteen. The conduct occurred in 2014, when appellant was about ten years old.

The juvenile court entered an order accepting appellant's plea, and it placed appellant on juvenile probation for two years. The juvenile court also ordered that

---

[2]     *See* TEX. R. APP. P. 49.1.

[3]     *See* TEX. CODE CRIM. PROC. ANN. art. 62.357(b) (authorizing appeal by respondent from order requiring sex offender registration).

appellant comply with certain conditions of juvenile probation, including the

following:

- Attend school (all classes) everyday, unless [appellant] ha[d] an excused absence. Obey all school rules and regulations.

- Obey the curfew set forth by the [juvenile] probation officer.

- [Do] [n]ot leave Brazos County for more [than] 24 [hours] unless given written permission to do so by the [juvenile] probation officer.

- [H]ave no sexual contact, including consensual sexual contact, with any other person.

- If the decision on sex offender registration is deferred while [appellant] is in a sex offender treatment program, [appellant] shall successfully complete such program.

- Submit to [an] evaluation for sex offenders as directed by [appellant's] juvenile probation officer. Attend, participate fully in, and successfully complete psychological counseling and/or treatment sessions (including aftercare) for sex offenders with an individual or organization which provides sex offender treatment or counseling as specified by or approved by the [trial court] or [his] juvenile probation officer. Assume responsibility for the offense for which [appellant was] adjudicated.

- Do not purchase, possess, access, or view any visual or audio material, as deemed inappropriate by [appellant's] juvenile probation officer, counselor, treatment provider, or parent/guardian/custodian. Do not patronize or go on the premises of sexually oriented establishments.

- Do not view any television, cable television, videos, DVDs, or computer programs as deemed inappropriate by [appellant's] juvenile probation officer, counselor, treatment provider, or parent/guardian/custodian.

- Do not access or view the [i]nternet without the direct supervision of a parent or other adult of at least 21 years of age who is aware of [appellant's] offense.

- Do not have or possess any device capable of taking, capturing, storing, displaying, or transmitting any sexually explicit image, regardless of the type of equipment or media involved.

- Do not have access to any device capable of taking, capturing, storing, displaying, or transmitting any sexually explicit image, regardless of the type of equipment or media involved, without express prior approval from the [juvenile court] o[r] [appellant's juvenile] probation officer.

The juvenile court also admonished appellant that if he was "unsatisfactorily discharged for any reason from [juvenile] probation," he would "be required to register publicly" as a sex offender "within seven (7) days of the unsuccessful discharge."

In a separate order, the juvenile court deferred its ruling "on the issue of whether [appellant] should be required to register as a sex offender pursuant to Texas Code of Criminal Procedure chapter 62" until appellant completed "sex offender counseling as a condition of [juvenile] probation." The juvenile court specified:

Before [appellant's] release from [juvenile] probation and after [his] completion of sex offender counseling, or at any time upon motion by the State, the [juvenile court] shall hold a hearing, except upon agreement of the parties, before [the juvenile court] pursuant to the procedures in [Texas Code of Criminal Procedure article] 62.351 (b) and (c), to determine whether [appellant] will not be required to register, will register non-publicly, or register publicly pursuant to the standards and burdens in [Texas Code of Criminal Procedure article] 62.352.

4

In October 2019, appellant was taken back into juvenile custody. In its motion to modify disposition, the State alleged that appellant had violated the conditions of his juvenile probation. After a hearing on the State's motion, the juvenile court adjudged that appellant had engaged in delinquent conduct consisting of the offense of public lewdness "by having sex in a public place, i.e.[,] the hall of a public school during school hours and was suspended from school due to sexual misconduct." Thus, the juvenile court found that appellant had violated the conditions of his juvenile probation that required him to "[o]bey all federal, state and municipal laws"; attend all school classes every day unless he had an excused absence; "[o]bey all school rules and regulations"; and "[a]ttend, participate, and complete all Juvenile Services programs assigned by the [juvenile] probation officer." Appellant was released from custody and the juvenile court ordered that appellant's probation be "extended until [his] eighteenth (18th) birthday." The juvenile court left "[a]ll prior terms of probation" in place and imposed supplemental conditions of probation requiring that appellant:

- participate in sex offender counseling with Dr. Roy Luepnitz at least until Dr. Luepnitz believes [appellant] has successfully completed such counseling and the [juvenile court] approves the end of said counseling.

- submit . . . to [a] clinical polygraph and/or other diagnostic tests or evaluations as directed by the [juvenile court, appellant's] juvenile probation officer[,] or Dr. Luepnitz.

- submit to a full psychiatric evaluation to identify all underlying psychiatric conditions, if any, and any necessary medication for treatment of said conditions.

In addition, the juvenile court, in its order, cautioned appellant that he was required to "successfully complete [a sex offender treatment] program," and if he was "unsatisfactorily discharged for any reason from probation," he would be "required to register publicly within seven (7) days of the unsuccessful discharge."

In December 2021, about a month before appellant's eighteenth birthday and the expiration of his juvenile probation, the State filed a motion to order sex offender registration after deferral. In it, the State asserted that since the juvenile court had extended appellant's juvenile probation and imposed additional conditions, appellant had "continued to violate the conditions of his probation, engaged in various behaviors which [we]re contrary to the successful completion of sex offender counseling, and [had] failed to complete sex offender counseling." Also, before the expiration of appellant's term of juvenile probation, the State filed a second motion to modify disposition, alleging that appellant had violated various conditions of his probation by (1) having "sexual contact with seven teenage females" between January of 2020 and December 10, 2021; (2) failing "to successfully complete sex offender treatment"; (3) possessing "a cellular telephone capable of taking, capturing, storing, displaying, and transmitting sexually explicit images"; and (4) having "access to [a] device capable of taking, capturing, storing,

6

displaying, or transmitting any sexually explicit image . . . without express prior approval from the [juvenile] [c]ourt or [his] probation officer."

On the last day of appellant's juvenile probation period, the juvenile court entered an order in which it "unsuccessfully discharge[d]" appellant from juvenile probation, noting that he had "violated his terms of [juvenile] probation in multiple ways" and his conditions of juvenile probation could not "be modified due to his age."

The juvenile court then held a hearing on the State's motion to order sex offender registration after deferral in January and May 2022. Appellant's mother testified that appellant had been accepted for admission by two colleges, one of which had offered him an academic scholarship and the other which had offered him an athletic scholarship. Appellant also had applications pending at a few other schools and was looking into enlisting with the National Guard.

Appellant was ten years old when the "original incident[s]" occurred, and he was thirteen years old when the charges were brought against him. In 2018, appellant "was diagnosed with [attention-deficit/hyperactivity disorder ('ADHD')], anxiety, depression, communication issues, and an adjustment disorder," for which he had received treatment.

His parents "ha[d] seen a change" in appellant's behavior since appellant started therapy with Dr. Luepnitz. He "[did] his chores around the house," "[took]

7

care of the animals," and did "what he [was] told to do." They "sometimes" had to "redirect [appellant] on his duties and responsibilities," "[b]ut for the most part," they were "pleased with his behavior."

According to the terms of his juvenile probation, appellant had a 7:00 p.m. curfew, but appellant's mother conceded that he occasionally was out later than that "if he wanted to have dinner with his friends" or his three older siblings. And after appellant got his driver's license in August 2021, his mother "sometimes would" allow appellant to drive on his own.

Appellant's mother acknowledged that at a prior hearing, the juvenile court had made it clear that appellant was not allowed to have a cellular telephone. But when appellant ran errands on his own, she gave him a cellular telephone to use "for emergencies." Appellant's mother denied that there was no internet blocker on the cellular telephone that she gave appellant. She stated that she had placed an internet blocker on the phone after learning at a prior hearing that appellant had used the cellular telephone to look at pornography.

According to appellant's mother, appellant had a girlfriend whom he saw "at least maybe once a week." The girlfriend "c[ame] out to the house." Appellant and his girlfriend had also "driven to get something to eat before" without supervision.

Appellant had a previous girlfriend whom he used to see about once a month. Appellant's mother stated that appellant and his previous girlfriend would be

8

supervised "[w]hen she came to the house," but "when they went to get something to eat or run an errand," they were not supervised.[4]

Maria Renshaw Hubbard, a polygraph examiner, testified that she conducted a polygraph examination of appellant in December 2021. Hubbard "primarily" interviewed appellant about whether he had violated the conditions of his juvenile probation. She also spoke to him about the underlying offense. Appellant told Hubbard that "he had sexually assaulted . . . two different cousins."

In her "professional opinion[,] [Hubbard] felt like [appellant] was minimizing" the sexual assaults. Hubbard also found it "strange" that appellant seemed "very uncomfortable" talking about his underlying offense because in her experience "most people" who "ha[d] completed a sex offender treatment program," "including juveniles," "[were] very comfortable talking about . . . what [they] did to be placed on probation."

As to violating the terms of his juvenile probation, appellant told Hubbard that, without his parents' knowledge, he had once "consumed some alcohol" that an uncle had given to him. Appellant also "admitted to looking at some pornography" around February 2020. Appellant told Hubbard that since that time, he "had not viewed any pornography." And appellant reported to Hubbard that he had received

---

[4]     Appellant's father also testified. His testimony was consistent with that of appellant's mother.

a traffic ticket. Hubbard noted that she did not think that appellant had told his juvenile probation officer about the traffic ticket. Additionally, appellant told Hubbard "about having sex with a girlfriend in a vehicle."

Hubbard testified that appellant had acknowledged that he had "seven sexual partners" in the twenty-three months before the polygraph examination. He described two of them as "girlfriends" and "[t]he other five" as "friends" or "casual acquaintances." Appellant noted to Hubbard that all seven "were peers, people his own age, younger or a little older."

In Hubbard's experience, that type of sexually active behavior was "absolutely, positively not" normal for someone on juvenile probation. She observed that the contracts between juveniles and "[m]ost sex offender treatment providers" "state[] that they are not to have sexual contact with another human or animal." According to Hubbard, "[p]art of" the reason for the prohibition of sexual behavior "is because of their age. It's not smart for children to have sex."

Hubbard also noted that she was "a little concerned about [appellant's] cell[ular] [tele]phone usage." Before her interview with appellant, she had talked with him "about him getting in trouble because of the cell[ular] [tele]phone" because "[t]here were times that he was given a cell[ular] [tele]phone [when] he was not supposed to" have one.

10

Jeanie Norrid appellant's juvenile probation officer, testified that she had reviewed the conditions of his juvenile probation with appellant, which included a "[7:00 p.m.] curfew, no sexual contact," and "no unsupervised phone or computer access." Appellant "violated all" of those conditions.

Norrid was "concerned" when appellant was brought back into juvenile custody for the October 2019 public lewdness charge because if a juvenile is "on [juvenile] probation for such a serious offense of aggravated sexual assault," he "know[s] what's on the line." To Norrid, it showed that appellant lacked "impulse control." Norrid also found out that appellant had previously violated other conditions of his juvenile probation, including that "he had been given a cell[ular] [tele]phone" and had used it to watch pornography. So, a "lack of impulse control" was "a continuing theme throughout" appellant's juvenile probation period.

After the juvenile court entered the August 2020 modification order, Norrid reiterated to appellant and his parents that appellant had to be supervised at all times when on a computer or a cellular telephone. In September 2021, though, appellant's school informed Norrid that appellant had a cellular telephone. The juvenile court held a status hearing at which appellant denied having a cellular telephone, but he later admitted to Norrid that he did have one.

Norrid also noted that she had recently learned that appellant had attended two out-of-town basketball tournaments without first obtaining permission to attend

11

them as required by the conditions of his juvenile probation. And appellant did not inform Norrid that he had gone out past curfew to attend prom in May 2021 and homecoming in October 2021, or that he had gotten a traffic ticket in the fall of 2021. Norrid was not aware that appellant had been using a cellular telephone without parental supervision or that he had been sexually active while on juvenile probation until she learned about the results of his polygraph examination from December 2021.

Latonya Hendricks, a licensed professional counselor and a licensed sex offender treatment provider, testified that appellant became her client in February 2019. At first, Hendricks found appellant to be a "likeable kid" and "easy to work with," but "[t]hings started to change" around October 2019, "the time of the [public lewdness] offense." After appellant was released from juvenile custody, "[h]e began to be more reserved, more quiet."

In performing a court-ordered psychosexual assessment of appellant, Hendricks learned that appellant had been "watching pornography throughout" the time he had been in counseling with her. After she reported that discovery to appellant's juvenile probation officer, her relationship with appellant and his family deteriorated.

Hendricks also testified that appellant was required to submit to a polygraph examination after the October 2019 public lewdness offense. During her

pre-polygraph interview with appellant, it seemed like he was "blaming" the victims, indicating that they "were lying and they weren't being truthful about what happened." And Hendricks noted that appellant seemed "really concerned about whether he would be locked up because he failed."

Hendricks terminated her treatment of appellant because according to the sex offender treatment model she used, "if a [juvenile] picks up another offense or [continues] to prove that they are unable to obey the rules of sex offender treatment and be safe in the community, a more restrictive, intensive environment is the recommendation." The treatment model that Hendricks used "ha[d] four phases of treatment." Appellant completed the first phase, but "began to have problems" in the second phase, in which he was asked "to change behaviors and look at the things that led up to the offense and make adjustments to behaviors at that time." Hendricks acknowledged that treatment generally "slow[ed] down at that point" because that was when her client was "starting to work" and accepting responsibility for what he had "done in the past." But appellant "kind of halted and stopped" working at that point. When appellant came to his counseling appointments with her, "[h]e did not bring his book, and he had not completed assignments." Hendricks concluded that appellant was not able to accept responsibility for his actions.

In the court-ordered psychosexual assessment of appellant that Hendricks conducted in December 2019, she "found that [appellant] struggled and had

13

difficulties with impulse control and poor judgment." She also did an evaluation to determine appellant's risk of recidivism and concluded that he had a "moderately high" risk of reoffending.

Dr. Luepnitz, the psychologist whom the juvenile court had appointed to complete sex offender counseling with appellant, testified that the purpose of sex offender treatment with juveniles was to "help them gain" the skills necessary to control their thinking and "take responsibility for their behavior," so that they would have "no more victims." It was important for a juvenile in sex offender treatment to take responsibility for his behavior because a person "can do anything if [he is] not responsible." He must learn that there are consequences to the choices he makes.

According to Dr. Luepnitz, honesty was important in counseling because a counselor "can't deal with the issues" that a juvenile has if the counselor does not know what they are. For example, if the juvenile is "looking at porn[ography]" but not telling the counselor, they "can't talk about" it and if the juvenile is "having problem lusting and not controlling [his] thoughts," the counselor "need[s] to know."

Dr. Luepnitz explained that he began sex offender counseling with appellant in March 2020. In his psychosexual evaluation of appellant, Dr. Luepnitz found appellant to "be at the low-moderate risk to act out sexually, but at a high risk for technical violations of his [juvenile] probation due to ADHD, thought disorder under stress, elevated and variable mood, and impulsivity." Dr. Luepnitz was aware that

14

appellant had "issues with impulse control and sleep" and that "the combination of those issues could lead to [appellant] making dangerous decisions and getting himself in trouble." Thus, it was important for appellant to let Dr. Luepnitz know if his ADHD medication was not working so that Dr. Luepnitz could "make sure [appellant was] under control."

When Dr. Luepnitz began treating appellant, appellant had an ankle monitor. Dr. Luepnitz had appellant sign a behavior contract with him in which appellant agreed, among other things, that he would not look at pornography or have "casual sex." Appellant also agreed to keep his appointments and to "disclose [his] sex[ual] offense" to any potential sexual partner. And appellant knew the possible consequences of violating his juvenile probation; it was something he and Dr. Luepnitz discussed regularly during their counseling sessions.

As their counseling sessions progressed, Dr. Luepnitz became concerned that appellant was "not being fully honest with [him] and struggled with minimization, justification, and denial." Those were important things to work on with appellant because "[t]o be truly empathetic means you are not justifying and you are not using cognitive distortions to rationalize your behavior" and you are able to take full responsibility for misbehavior.

Before Dr. Luepnitz learned the results of appellant's December 2021 polygraph examination, he thought that appellant had been making progress in his

treatment and that he and appellant "had a much better relationship than what [they] actually had." In preparing for the hearing, though, Dr. Luepnitz was made aware for the first time that appellant had not been wearing an ankle monitor and had had seven sexual partners while on juvenile probation. Previously, Dr. Luepnitz "didn't know [that appellant] had the freedom to be meeting up with any females" or had access to a cellular telephone. If appellant had disclosed those things to him, it would have caused Dr. Luepnitz concern because it showed appellant was "not controlling his sexual behavior with multiple people." He was concerned not only because appellant did not discuss that behavior with him so that they could have "deal[t] with it" and talked about the "risks [he was] taking," but also because of "what [appellant] could be giving up" and "the possible consequences" for his behavior. Because appellant was not honest with him, Dr. Luepnitz "didn't know all the issues that [they] needed to discuss."

Based on his interactions with appellant and what he had learned about appellant's behavior after their counseling relationship ended, Dr. Luepnitz opined that appellant had not successfully completed sex offender treatment.

The juvenile court signed an amended order in which it granted the State's motion to order sex offender registration after deferral and denied appellant's motion requesting that his sex offender registration be excused or made nonpublic.[5] The

---

[5] Appellant's motion is not contained in the appellate record.

16

juvenile court found that "[t]he interests of the public require[d] [sex offender] registration" and "[t]he protection of the public would be increased by [the] registration of [appellant]" under Texas Code of Criminal Procedure chapter 62. The juvenile court also found that "[a]ny potential increase in protection of the public resulting from registration [wa]s not clearly outweighed by any anticipated substantial harm to [appellant] and [his] family that would result from" appellant's registration as a sex offender.

The juvenile court made findings of fact and conclusions of law, which included the following findings:

- Due to [appellant]'s lies and fail[ure] to disclose key information, [appellant] failed to complete sex offender treatment.

- [Appellant] failed to complete sex offender treatment, despite having almost three years to do so.

- [Appellant] violated his conditions of [juvenile] probation [by]: [(1)] [c]ommitting a new offense, public lewdness in October 2019,[;] [(2)] failing to report contact with law enforcement (speeding ticket) in fall of 2021; [(3)] [d]rinking alcohol; [(4)] [b]eing suspended from school for sexual misconduct in October 2019; [(5)] [v]iolating curfew; [(6)] [f]ailing to complete sex offender treatment; [(7)] [h]aving sexual contact with seven females while on [juvenile] probation; [(8)] [v]iewing pornography; and [(9)] [p]ossessing a cell[ular] [tele]phone capable of transmitting sexually explicit images.

- [Appellant] continue[d] to have difficulty controlling his impulsivity, specifically with regard to sexual behavior.

17

- [Appellant] failed to follow the rules of sex offender counseling with both . . . Hendricks and Dr. . . . Luepnitz, specifically by committing a new sexual offense, viewing pornography, and having sexual contact with seven different females.

- [Appellant]'s disregard for the rules of [juvenile] probation and inability to control his sexual impulses ma[d]e him a potential safety risk to the community at large, as well as the college campus on which he intend[ed] to live in the fall.

- There was no evidence presented of any known substantial harm to [appellant] from being required to register.

- There was no evidence presented that [appellant] would be unable to attend [the college that accepted him for admission], live in the dorms [there], or lose his [athletic] scholarship . . . if he was required to register.

Pertinent to this appeal, the juvenile court concluded that:

- If a court defers a decision on registration, the court retains discretion and jurisdiction to require the juvenile to register at any time during the treatment or on the successful or unsuccessful completion of treatment.

- To avoid registration, the juvenile has the burden of proof to show by a preponderance of the evidence that protection of the public is not increased by registration or that any potential increase in protection of the public is clearly outweighed by the anticipated substantial harm to the juvenile and the juvenile's family that would result from registration.

### Standard of Review

Juvenile delinquency proceedings are generally considered civil proceedings with quasi-criminal elements, governed by the Texas Family Code. *See In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009); *see also* TEX. FAM. CODE ANN. § 54.0405

18

(discussing juvenile probationary requirements in sex offenses). Juvenile sex offender registration proceedings, however, are specifically governed by chapter 62 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 62.351.

A juvenile may appeal a juvenile court's sexual offender registration order "in the same manner as the appeal of any other legal issue in the case." TEX. CODE CRIM. PROC. ANN. art. 62.357(b). "The standard of review in the appellate court is whether the juvenile court committed procedural error or abused its discretion in requiring registration." *Id.* Whether the juvenile court properly applied the law is a procedural issue that we review de novo. *See In re J.R.H.*, 79 S.W.3d 1, 6 (Tex. 2002) ("[R]eview of the application of the law to the facts is de novo because the trial court is in no better position to decide legal issues than the appellate court.").

A juvenile court has broad discretion to determine a suitable disposition for a juvenile who has been adjudicated as having engaged in delinquent behavior. *In re W.J.P.*, 2021 WL 2931437, No. 01-19-00988-CV, 2021 WL 2931437, at *2 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.). Under an abuse-of-discretion standard of review, the legal and factual sufficiency of the evidence are relevant in evaluating whether the juvenile court abused its discretion. *In re Z.P.H.*, No. 02-13-00188-CV, 2014 WL 670203, at *2 (Tex. App.—Fort Worth Feb. 20, 2014, no pet.) (mem. op.); *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—

Dallas 2005, no pet.). We review all of the evidence admitted at the hearing in the light most favorable to the juvenile court's ruling to determine whether a rational trier of fact could have found (1) that the protection of the public would not be increased by registration of the juvenile or (2) that any potential increase in protection of the public resulting from registration of the juvenile was clearly outweighed by the anticipated substantial harm to juvenile and the juvenile's family that would result from registration. *See* TEX. CODE CRIM. PROC. ANN. art. 62.352(a); *In re B.C.G.*, No. 07-21-00214-CV, 2022 WL 14812687, at *1 (Tex. App.— Amarillo Oct. 25, 2022, no pet.) (mem. op.).

An abuse of discretion occurs when the juvenile court acts unreasonably or arbitrarily, or without reference to any guiding rules or principles. *In re C.J.*, No. 01-08-00771-CV, 2009 WL 1886614, at *2 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.). Standing alone, the fact that a trial court may decide an issue within its discretion differently than we would does not demonstrate an abuse of discretion. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010).

### Sex Offender Registration

In his sole issue, appellant argues that the trial court erred in ordering that he be required to publicly register as a sex offender because the juvenile court

incorrectly concluded that he bore the burden of proof to show that he should be exempted from registration.

This issue raises questions of statutory construction, which we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We construe statutory language according to its plain meaning and in the context of the statute's surrounding provisions. *In re Office of Att'y Gen. of Tex.*, 456 S.W.3d 153, 155 (Tex. 2015). "The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive." *Id.* at 155–56.

Generally, a juvenile who is adjudicated delinquent for the underlying offense of aggravated sexual assault is required to register as a sex offender with the local law enforcement authority where the juvenile resides. TEX. CODE CRIM. PROC. ANN. arts. 62.001(5)(A), 62.051(a); *In re Z.P.H.*, 2014 WL 670203, at \*2. Once the juvenile is adjudicated delinquent or enters a plea agreement as to the underlying offense of aggravated sexual assault, though, the juvenile court may enter an order deferring its decision on whether to require the juvenile to register as a sex offender until the juvenile "has completed treatment for [his] sexual offense as a condition of probation or while committed to the Texas Juvenile Justice Department." TEX. CODE CRIM. PROC. ANN. art. 62.352(b)(1).

21

If the juvenile court does not defer its decision, the juvenile may, either during or after the disposition of an offense for which sex offender registration is required, file a motion for exemption from the registration requirement. *Id.* art. 62.351. Under those circumstances, the juvenile bears the burden of proving by a preponderance of the evidence either "that the protection of the public would not be increased by" the juvenile's registration or "that any potential increase in protection of the public resulting from" the juvenile's registration was "clearly outweighed by the anticipated substantial harm" to the juvenile and his family "that would result" from such registration. *Id.* arts. 62.351, 62.352(a).

If, as here, the juvenile court defers its decision on whether the juvenile will be required to register as a sex offender, it "retains discretion and jurisdiction" to require or exempt the juvenile from sex offender registration "at any time during the treatment or on the successful or unsuccessful completion of the treatment, except that during the period of deferral, registration may not be required." TEX. CODE CRIM. PROC. ANN. art. 62.352(c); *see also In re D.K.*, 589 S.W.3d 861, 864 (Tex. App.—Fort Worth 2019, pet. denied). In any case, if the juvenile court determines either that requiring the juvenile to register would not increase the protection of the public or "that any potential increase in protection of the public resulting from" the juvenile's registration would be "clearly outweighed by the anticipated substantial harm" to the juvenile and his family "that would result from" requiring him to

22

register, the juvenile court must "enter an order exempting" the juvenile from the sex offender registration requirement. TEX. CODE CRIM. PROC. ANN. art. 62.352(a). Further, a juvenile who successfully completes sex offender treatment is exempted from the registration requirement unless the State files a motion to impose the registration requirement and the juvenile court "determines the interests of the public require registration." *Id.* art. 62.352(c).

Appellant argues that because he entered sex offender treatment, Texas Code of Criminal Procedure article 62.352(c) required the State to bear the burden of proving that he should be required to register as a sex offender. Specifically, appellant argues that the State had the burden of proof because, according to his interpretation, the juvenile court's deferral order required the State to bring a motion to prove that sex offender registration was necessary. The language of the order relied on by appellant states:

> Before [appellant's] release from [juvenile] probation and after [his] completion of sex offender counseling, or at any time upon motion by the State, the [juvenile court] shall hold a hearing, except upon agreement of the parties, before [the juvenile court] pursuant to the procedures in [Texas Code of Criminal Procedure article] 62.351 (b) and (c), to determine whether [appellant] will not be required to register, will register non publicly, or register publicly pursuant to the standards and burdens in [Texas Code of Criminal Procedure article] 62.352.

This language provides notice that the juvenile court would hold a hearing about whether appellant would be required to register as a sex offender at one of three

junctures: (1) before his release from juvenile probation; (2) after his completion of sex offender counseling; or (3) at another time if the State filed a motion. Thus, it gave the State the option to file a motion but did not require it to do so. Further, the language of the juvenile court's order does not expressly alter the burden of proof implied in Texas Code of Criminal procedure article 62.352(c), which exempts only a juvenile who has successfully completed sex offender treatment from registration unless the State moves to require registration and the juvenile court, in its discretion, concludes that registration is necessary. Appellant offers no reason for interpreting the juvenile court's order in a way that conflicts with the statute, and we decline to do so.

The other provisions of Texas Code of Criminal Procedure chapter 62 that apply to juveniles place the burden of proof on the juvenile where registration is ordered but the juvenile seeks an exemption. *See* TEX. CODE CRIM. PROC. ANN. art. 62.351. They do not specify whether the State or the juvenile bears the burden of proof where the juvenile court has deferred a decision on whether to require or exempt the juvenile from the sex offender registration requirement and the juvenile has not successfully completed sex offender treatment. *See id.* art. 62.352(c) (providing juvenile court retains discretion to require or exempt juvenile from sex offender registration "at any time during the treatment or on the successful or

24

unsuccessful completion of the treatment" but only implying that State, as movant, bears burden of proof if juvenile successfully completes treatment).

Here, though, we need not consider this issue in the abstract. The juvenile court, in imposing the conditions of appellant's probation, specifically admonished appellant that if he was "unsatisfactorily discharged for any reason from probation," he would "be required to register publicly" as a sex offender "within seven (7) days of the unsuccessful discharge." And on the last day of appellant's probation period, the juvenile court entered an order in which it "unsuccessfully discharge[d]" appellant from juvenile probation. Essentially, the juvenile court had already decided that appellant was required to register. *Cf. Adams v. State*, No. 05-10-01056-CR, 2011 WL 5311099, at *3 (Tex. App.—Dallas Nov. 7, 2011, pet. ref'd) (mem. op., not designated for publication) (holding, in adult criminal probation revocation appeal, trial court did not err in requiring defendant to register as sex offender without holding hearing after defendant did not successfully complete sex offender treatment required as condition of juvenile probation; under Texas Code of Criminal Procedure article 62.352(c), juvenile court retained discretion to require him to register on unsuccessful completion of treatment). Thus, the juvenile court did not err in concluding that appellant had the burden of proving that he was entitled to exemption from the sex offender registration requirement. *See* TEX. CODE CRIM. PROC. ANN. art. 62.351(a), (b) (providing "[d]uring or *after*

25

disposition," juvenile court on juvenile's motion shall conduct hearing to determine whether to require sex offender registration and placing burden of persuasion on juvenile (emphasis added)).

Appellant also cites several cases involving different facts to argue that the juvenile court erred in requiring him to register because those other decisions requiring sex offender registration were "based on tangible sexual and non-sexual risk to the public far exceeding the evidence in this case." *E.g.*, *In re R.A.*, 465 S.W.3d 728, 742–43 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (affirming order for non-public registration based on behaviors described as "uncontrollable," "aggressive," and "predatory"); *In re S.M.*, No. 12-12-00264-CV, 2013 WL 1046891, at *3 (Tex. App.—Tyler Mar. 13, 2013, no pet.) (mem. op.) (affirming order requiring public registration where juvenile claimed to be member of criminal street gang, had "long history of being physically aggressive, disrespectful to teachers, staff, and fellow students," and in one incident, had threatened to commit shooting at school and "go to jail for murder"). Appellant does not assert that the evidence admitted in the juvenile court was insufficient to support any of the juvenile court's findings in support of its decision to require appellant to register as a sex offender; his complaint is only about how the juvenile court weighed the evidence. How to weigh the evidence, though, is a matter of the juvenile court's discretion. *Bell v. State*, 649 S.W.3d 867, 893 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd);

*In re J.F.C.*, No. 01-17-00411-CV, 2017 WL 6374660, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 14, 2017, no pet.) (mem. op.); *see also Quixtar*, 315 S.W.3d at 31 (fact that trial court may decide issue within its discretion differently than reviewing court would does not demonstrate abuse of discretion).

We hold that the juvenile court did not err in imposing the burden on appellant to prove that he should not be required to register as a sex offender and in finding that the public interest required appellant to register as a sex offender. We further hold that the trial court did not err in ordering appellant to publicly register as a sex offender.

We overrule appellant's sole issue.

## Conclusion

We affirm the order of the juvenile court.

Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

27